### COUNTY OF ESSEX,

AT THE

### CIRCUIT SESSION IN MAY, 1857.

---

PRESENT:

HON. ISAAC F. REDFIELD, CHIEF JUDGE.
HON. PIERPOINT ISHAM, } ASSISTANT JUDGES.
HON. MILO L. BENNETT, }

---

HORACE B. ROOT *v.* HORACE F. ROSS AND HIS WIFE
DIANA ROSS.

[ IN CHANCERY. ]

*Payment. Attachment. Lien. Fraud.*

Payment of the debt and costs while the suit is pending extinguishes the claim upon
which the suit is predicated.

The defendant's agent gave, and the orator's solicitor received a sum of money
intended as a payment of the amount due on a note which the orator held against

the *defendant. Some dispute arising as to* the amount of the money paid, the orator's solicitor, with the assent of the defendant's agent, handed it to one I. to count. After receiving and counting it, I. attached it as the property of the orator. *Held,* that, though the orator's solicitor subsequently repudiated it as a pay-. ment, it so operated, and was, it being sufficient in amount, a full satisfaction and discharge of the note.

The defendant's agent, at the same time, gave, and the orator's solicitor accepted the agent's individual obligation to pay the amount of costs then accrued in a suit upon the note. *Held,* that the giving and receiving of this obligation was a virtual payment of such costs.

The attachment of money of a debtor will not defeat a perfected lien existing upon it in favor of an attorney or created by an assignment.

One about to pay money due from him may properly inform those to whom his creditor is indebted and aid them in attaching it after it shall be paid and become the property of his creditor. Such a proceeding, though it may not be polite or courteous, is neither a fraud or legal wrong.

APPEAL FROM THE COURT OF CHANCERY. The orator in his bill alleged that on the 4th day of May, 1850, he, being the owner of the following described land, to wit: the northerly half of the southerly third, and the southerly half of the middle third of lot number sixty-five in the township of Newark, in the county of Caledonia, supposed to contain one hundred acres, be the same more or less, of the value of four hundred dollars, contracted with Horace F. Ross, then of East Haven, in the county of Essex, to sell him the said land for the consideration of four hundred dollars, and subsequently thereto, on the making of the conveyance of the said land and the notes and mortgage to secure the payment of such sums as were not paid down, at the special instance and request of the said Horace F. Ross, the orator deeded the said land by the description aforesaid to Diana Ross, wife of the said Horace F. Ross, who at the like request of the said Horace, executed to the orator, Horace B. Root, three promissory notes, all bearing date on the 4th day of May, 1850, one for fifty dollars, payable in one year from the date thereof, with interest annually ; one for fifty dollars, payable in two years from the date with interest annually, and one for ninety-four dollars, payable in three years from the date thereof, with interest annually, being for the balance due from the said Horace F. Ross to the said Horace B. Root on the said contract; and that then and there the said Diana Ross, wife of the said Horace F. Ross, signed the said notes with

her own name, at the request of her said husband; and for his benefit, she then and there made, executed and delivered to the said Horace B. Root a mortgage deed of the same premises to secure the payment of the said notes above named, which notes and mortgage the said Diana and the said Horace F. Ross then and there delivered to the said Horace B. Root, as and for a full security and indemnity to him for the balance of the purchase money on said land trade, and for the payment and security for payment of such balance as there was or might afterwards accrue due on said notes and mortgage, which mortgage and notes were then and there accepted as and for payment and security as aforesaid, whereby the said deed of the said land would enure to the benefit of the said Horace B. Root, and the said notes and mortgage so executed by the said Diana so became the notes and mortgage of the said Horace F. Ross to the said Horace B. Root to the securing of the payment of the balance of said purchase money so expressed in said notes and mortgage; that immediately thereafter the said Horace F. Ross entered into and took possession of said premises, and had ever since occupied, possessed and enjoyed the same as his own, taking the whole rents and profits to himself, she, the said Diana Ross, assenting and concurring in the said contract, deeds and notes so made and executed, and in the taking possession, occupation and enjoyment of the same so as aforesaid, for the mutual benefit of her said husband and herself on the one part, and the said Horace B. Root on the other part; that the sum of money specified in the promissory notes mentioned in the condition of said mortgage deed were not paid at the times therein mentioned, or at any other time by the said Horace F. Ross, or the said Diana Ross, or by any other person for them, or either of them, but that the same was now due and owing to the orator, with interest thereon accrued; and that the estate in the said mortgaged premises was become absolute in the orator and his heirs.

The bill prayed for an order for the payment of the amount due by a given day, or in default thereof the defendants be foreclosed, &c.

The defendant Horace F. Ross answered that it was true that his wife Diana Ross, on the 4th day of May, 1850, executed the

deed of mortgage described in the complainant's bill to secure the payment of three promissory notes of that date, signed and delivered by the said Diana to the complainant, viz : 'one for fifty dollars payable in one year from date, one other for fifty dollars payable in two years from date, and one other for ninety-four dollars payable in three years from date, all made payable to the complainant or order, with interest annually ; but he (the said Horace F. Ross) averred that at said East Haven, on or about the 8th day of March, 1851, and before any of said notes became due, he paid and took up said ninety-four dollar note, and that on the fourth day of May, 1851, he also paid to the complainant and took up the first fifty dollar note, which became due on that day ; that sometime in the spring of 1851 he received notice from Lucius Denison that he held the second fifty dollar note above described, and that payment thereof, when paid, must be made to him ; that when said note became due the defendant called upon said Denison and offered to pay it, but told him it would accommodate him to defer the payment for the present if he could, to which proposition the said Denison consented, and promised to give the defendant reasonable notice when he desired its payment ; that in the month of May, 1853, the defendant removed to East Winsted, in the state of Connecticut, where he had ever since resided ; that a few days before he left he saw said Denison and told him he was about to leave, to which the said Denison replied that he was in no hurry for the money ; that this was the last the defendant heard of said note, and that he supposed said Denison still held and owned it until the receipt of a letter about the 3d or 4th of April, 1854, from Henry S. Bartlett, Esq., the attorney and solicitor of Horace B. Root, in language as follows :

                                   " Lyndon, March 31, 1854.
" Horace F. Ross, Esq., Dear Sir :

    " I have a note in my office for collection in favor of Horace B. Root, signed by your wife, May 4, 1850, for fifty dollars. As Mr. Root wishes to save you cost, if possible, will you please send me, per express, the amount of said note, which is sixty-two dollars and eighty-two cents, and costs already accrued, amounting in all to sixty-four dollars ; otherwise Mr. Root will foreclose the mortgage *immediately.*

" Please forward the money as above directed on reception of this, and save costs of suit. I will send the note on receipt of the money. Yours, &c.

(Signed,) " HENRY S. BARTLETT."

That on the night of the reception of the above letter the defendant wrote a letter to his brother, Ozro L. Ross, then in East Haven, inclosing sixty-five dollars in money, and mailed the same the next morning, instructing him to go to Mr. Bartlett's office as soon as he received the money and pay said note and costs, and settle the whole matter; that his said brother Ozro, as the defendent was informed and believed, received at East Haven said letter and the inclosed money on the 18th day of April, 1854, and that in pursuance of its instructions his brother, on the 19th day of April, 1854, went to the office of the said Henry S. Bartlett, in Lyndon, in the county of Caledonia, to pay said note ; that when he entered said office said Bartlett and one George Ide were there, and that after remaining in said office a few moments, his brother remarked to said Bartlett that he had come to pay the mortgage note of fifty dollars for the defendant and his wife, the said Diana, which she gave to Horace B. Root, to which the said Bartlett replied: "I suppose that is what Root wants, and it was a rascally piece of business in him in bringing proceedings to foreclose the mortgage without giving notice that he wanted his money ;" and that Bartlett then got the note and began computing the interest, and after he had ascertained the amount due on the note he stated it to be sixty-two dollars and ninety-seven cents; that the said Ozro Ross handed him, (as he supposed,) sixty-three dollars, which the said Bartlett counted, and said there was but sixty-two dollars, and passed the money to the hands of the said George Ide, and said, " count it, George," and handed the said Ozro the note while Ide was counting the money; that after Ide had counted the money he said there was but sixty-two dollars, and the said Ozro then handed Bartlett another dollar, and Bartlett gave him back three cents and said he could not tell what the costs were that had been made on the proceedings for a foreclosure; that he could not make out the bill of costs until he could send to St. Johnsbury to the printing office and get intelligence from there, but that the said Ozro might sign a writing obligating himself to pay said costs

when he should ascertain the amount of the same, which the said Ozro agreed to do, and that Bartlett then wrote an obligation which the said Ozro signed, obligating himself to pay said costs, which said writing was in the words and figures following :

"Lyndon, April 19, 1854. I hereby agree to pay Henry S. Bartlett the costs in a cause now pending in chancery, being a bill of foreclosure against Diana Ross and Horace Ross, in favor of Horace B. Root, in consideration that said cause is settled and withdrawn by the said Bartlett, attorney for said Root.

(Signed,)                               " OZRO L. ROSS.

" Amount of note at above date, sixty-two dollars and ninety-seven cents.   Note dated May 4, 1850, for fifty dollars."

That said Bartlett then took said writing and the defendant's brother went away, it being agreed that Bartlett should notify him when he (Bartlett) ascertained the amount of the costs, and he (the said Ozro) was to go and pay the same; that about a week thereafter, the defendant's brother being at said Bartlett's office to attend to some other business, Bartlett got the writing above described and delivered the same to him, saying that he would get the costs out of Root, that neither the defendant or his wife or brother need pay them, that it was a rascally trick of Root to make the costs, and that now he should pay them; that the defendant's said brother took the writing and left the office, supposing the whole proceedings regarding the foreclosure were settled ; that after the said George Ide had counted the money as above mentioned, he remarked, " I guess I will keep this money, for I have a process against Root for the money, and I guess I will keep it ; " that said Bartlett laughed and said, " that was slickly done, but it is good enough for Root, for he need not have sued Ross without notifying him ; " that his brother soon afterwards communicated the foregoing facts to the defendant, and he supposed the whole matter was settled until he came to Vermont in March, 1855, when for the first time he learned that the said suit had been kept in court, a decree of foreclosure obtained by Root, and that the time of redemption had nearly expired ; that he then petitioned the court to open the decree, &c.

This answer was traversed, and testimony was taken by both parties.

The only witnesses produced on the part of the defense were the defendant Horace F. Ross and his brother Ozro L. Ross, who testified to substantially the same facts as those averred in the answer.

On the part of the complainant, Henry S. Bartlett testified that in March, 1854, he received from the complainant, Horace B. Root, the note and mortgage described in his bill to collect or foreclose, and that soon after he prayed out a bill of foreclosure, with an order of publication, and after there had been two publications in the Caledonian, Ozro L. Ross, a brother of the defendant Horace F. Ross, called at his office and said he was agent of his brother Horace, and as such wished to settle and pay the said note and cost; that he thereupon informed him of the amount due upon the note, but could not tell the cost, as he did not know the publisher's bill; that the said Ozro L. Ross then proposed taking up said note and giving his personal obligation for the payment of the costs when the same could be ascertained, to which the witness agreed; that said Ozro complained that said Root had done wrong in suing the note, and he made some threats, such as that he would have satisfaction or revenge, and seemed quite angry; that thereupon he left the office, saying he would return soon and pay said note and give his obligation for the costs as above stated; that in the course of an hour or two thereafter he returned to the office in company with George Ide and wished the witness to write said obligation and he would pay the amount of said note; that the witness thereupon wrote said obligation, and said Ross signed and handed it to him, together with a sum of money which he said was the amount due on the note, and requested him to count it and see if it was all right; that the witness counted the same, but found that it wanted one dollar of the amount due, and so informed him; that said Ross claimed that it was right, and while the witness was recounting it took the note from the table, saying, " I will make sure of this," and as the witness then supposed threw it into the fire and burned it. The witness told him repeatedly that he had made a mistake in counting the money, and it was mutually agreed that said Ide should count the same, and thereupon the money

was passed to said Ide to count, and he counted it and informed said Ross that he had made a mistake of one dollar; that Ross thereupon paid said dollar, which said Ide took, and Ross immediately left the office. The witness then demanded the money of Ide, who refused to pay the same, and said that he had certain writs in his hands prayed out by the creditors of said Root, and he was requested to attach said money by virtue of the same; and that said money had never been paid to the witness, nor, as he believed, to any one authorized to receive it, on account of Root, but that the same remained in the possession, or under the control of the said Ide. The witness further testified that soon after the aforesaid transaction, and, as he recollected and believed, on the same day that said Ross returned to his office and the witness protested against his aforesaid conduct and proceedings, and disclaimed all payment of said note and costs, and informed said Ross that he should proceed in the prosecution of said suit, and gave back to said Ross the said obligation for costs, who took the same, using most violent language against the said Root; and that the witness frequently thereafter informed said Ozro L. Ross of the progress of said suit, and the result of the same. The witness further deposed that the said Ozro L. Ross and the said Ide and divers others had told him that the writs held by said Ide, at the time of the pretended attachment of said money by him, were prayed out at the solicitation and request of the said Ozro L. Ross, and that previous thereto it was understood and agreed between said Ide and Ross that a pretended mistake should be made by said Ross in counting said money for the purpose and intent of placing the same in the hands of said Ide, and thus prevent any payment to the said Root or the witness, which pretense and intention the witness believed to be true. The witness also testified that he never used the various expressions, or had such conversations as were mentioned in the defendant's answer.

George W. Cahoon testified to substantially the same state of facts as those testified to by Bartlett, the conclusion of his testimony being as follows: "Mr. Bartlett counted the money over two or three times and made but sixty-two dollars of it. Ross said there must be sixty-three dollars, and it was mutually agreed that George Ide should count the money. Said Ide was sitting at

the end of the desk, leaning back against the window.   Said Ide
counted said money and made but sixty-two dollars.   Ross took
out another dollar bill and handed it to Mr. Bartlett.   I think Ide
remarked, let me see that, and took the bill.   About that time I
think Charles Humphrey came to the door and asked said Ross if
he was most ready to go.   Ross made some reply, and Humphrey
went off.   Bartlett asked Ide for the money, and he laughed, and
did not make any reply, and Ross left the office.   Afterwards Ide
told Mr. Bartlett that he had some writs and was going to attach
the money on debts against said Root.   I think Mr. Ross came in
again, and Mr. H. S. Bartlett said he should consider that no pay-
ment of the note, but should go on and foreclose.   On a subsequent
day Ross came to the office with some person, and Mr. Bartlett
then remarked about the same suit, that it was going on."

George Ide testified that in April, 1854, he was the sheriff of
Caledonia county, and on the 19th of April, 1854, he received
from Charles Humphrey three writs of attachment against Horace
B. Root, with directions to attach upon them the money Ozro L.
Ross was going to pay at Mr. Cahoon's office upon a claim said
Root had against the said Ross' brother.   His testimony then pro-
ceeded as follows :  " I think Ross was knowing to my having said
writs, and he was also knowing to Humphrey's directions to me to
attach the money.      *      *      *      *      *      There was an
arrangement between Humphrey and myself about the manner of
getting hold of the money, but am not positive whether Ross was
present or not.   The arrangement was that Ross should pay a less
amount than was due, and perhaps they would pass the money to
me to be counted, and in case they did I was to attach it.      *      *
*      *      *      Agreeably to such arrangement I went into the
office.      *      *      *      *      I think Mr. O. L. Ross went into
the office soon after I did, but not with me.   Mr. Ross said he
come to pay the money on his brother's debt.   Mr. Bartlett pro-
duced the note and told the amount due.      *      *      *      *      *
Mr. Ross handed Mr. Bartlett some money, and Mr. Bartlett
counted the money and said there was sixty-two dollars of it.
Ross said, 'aint there sixty-three ?'   Bartlett counted it again,
and said there was but sixty-two, and said, 'let Ide count it.'
Ross replied ' well.'   Bartlett passed the money to me and I

counted it, and there was but sixty-two dollars. While I was counting the money, I mean when I took the money to count, the note was upon the table. While I was counting it Ross took the note and said he guessed he would take that, for he had had trouble enough with it. He took up the note and tore off the name. After I had counted the money as above stated, I said there was but sixty-two dollars. Mr. Bartlett reached out to take the money from me after I had counted it, and I told him I had several writs against Root, and should attach the money. I attached the money on the writs above mentioned against said Root. I never handed the money to Mr. Bartlett after it was attached, and I now have the money in my possession. It has not been applied on any claim. I have never consented that Mr. Bartlett or any one else should have that money to apply on the said note. I think there was due at that time upon the note sixty-two dollars and ninety-seven cents. After the sixty-two dollars had been counted by me, Mr. Ross, I think, handed the ninety-seven cents to Mr. Bartlett, and he handed the same to me, saying I might as well have the whole of it. Mr. Bartlett handed me ninety-seven cents after he asked me to hand him back the sixty-two dollars. Mr. Bartlett said to me, the game is well played, and appeared considerably worked up about it, and some remarks were made by him, but I can hardly tell what. Mr. Bartlett said he was afraid Mr. Root would think he was treacherous to his client. I think I have not seen Mr. Ross and Mr. Bartlett together since then. After I had attached the money Mr. Ross agreed with Mr. Bartlett that when he (Bartlett) had ascertained what the costs were he (Ross) would pay it. I think the interest was not cast upon the note while I was in the office. I think there was no written obligation to pay said costs executed while I was at the office."

Haynes W. Belding and Charles Humphrey were examined as witnesses on the part of the complainant, and their testimony tended to prove that the writs in Ide's hands were sued out at the instigation or request of Ozro L. Ross, and that he arranged the plan by which there was to be a dispute as to the amount of money paid, with the purpose of having it passed into Ide's hands to count, when it was to be attached, &c.

33

The court of chancery, at their January Term, 1857,—POLAND, Chancellor,— ordered and decreed that the complainant's bill be dismissed, &c., from which decree the complainant appealed.

*G. C. & G. W. Cahoon,* for the complainant.

*T. Bartlett, Jr.,* and *E. A. Cahoon,* for the defendants.

The opinion of the court was delivered by

REDFIELD, CH. J. A question is made in this case whether the note secured by the mortgage was paid. This depends upon whether the money which went into the hands of George Ide had become the money of the plaintiff, or remained the money of the defendant.

It was given over as payment, and received as payment, and taking all the testimony together it is almost certain that it was the suggestion of the plaintiff's attorney that induced the delivery to Ide, and although the defendant's agent assented to it, there can be no doubt, we think, that the trust thereby created was to the plaintiff. And unless Ide can show some justification as against the orator, he would be liable to an action for the money, at the suit of the plaintiff.

There is no pretense from the testimony that Bartlett, the plaintiff's attorney, objected to the defendant's agent taking the note at the time, but the clearest evidence that he did not, but assented to it, in the fullest manner, and considered it paid at the time, and so did all present, the contract for costs being a payment, virtually, of such costs.

Ide testifies that Bartlett took the balance of ninety-seven cents, after he had notified him that he attached the sixty-two dollars, and then gave him the ninety-seven cents, saying he "might as well have the whole."

Bartlett says he told the defendant's agent, the first time he came into the office afterwards, that he should not treat it as payment.

This shows very conclusively that up to this time Bartlett had treated it as payment, and the defendant's agent also. And Bart-

lett is not certain whether this was the same day or some after day. And from George W. Cahoon's testimony this point is left uncertain, but more probable, perhaps, from the testimony of this witness, that it was not the same day. For although the witness says he thinks Bartlett said to the defendant's agent that day that he should not treat it as payment, he distinctly recollects that the agent came to the office on a subsequent day and Bartlett then gave him this notice, which he would not have done if he had done it before. And Bartlett evidently alludes to but one such notice. So that it was probably upon a subsequent day, but, at all events, it was a subsequent occasion.

We must then, we think, regard it as payment, unless the connivance in the attachment of the money will defeat the effect of the payment.

This is argued upon two grounds.

1. The defeating the liens upon the fund.

2. The aid which the defendant's agent gave to the attachment.

In regard to the first objection to the effect of the defendant's payment, it certainly could not defeat any lien which existed upon the money, either in favor of the attorney, or by way of assignment, if it had been properly notified, to have the money attached on the orator's debts. Those liens might be still enforced against the officer if they really existed in a perfected shape.

In regard to conniving at the attachment, we do not comprehend why it was any violation of duty on the part of the defendant's agent.

He was certainly not bound to aid the officer, or to inform the creditor, but, as this was not illegal, he might aid the officer if he chose. We do not see why it is any worse in the defendant's agent to aid in this attachment than in any other of the orator's property he might know of, or have in his possession. And it was never supposed that a third party was guilty of any wrong in aiding one to find and obtain his debtor's property by attachment. It is not committing any legal wrong, certainly, upon a debtor to aid his creditor in attaching his property. It may be not altogether polite or courteous, and especially where one does not intend to have the creditor obtain such an advantage, but it is no fraud, and no wrong which the law will recognize or condemn.

Payment of debt and costs extinguishes the claim upon which the suit is predicated, and it is immaterial that it is while the suit is pending.

We have no occasion to pass upon the validity of Ide's attachment. That question is in no sense involved in this suit.

Decree of chancellor affirmed.