No. 937.

## KERLIN v. THE NATIONAL ACCIDENT ASSOCIATION.

INSURANCE.—*Accident Insurance.*—*Premium, What Amounts to Payment of.*—*Tender of Full Amount of Premium.*—*Promise by Agent to Apply a Debt Owing by Him to Insured on Premium.*—*Presumption.*—Where, at the time of the execution of an application for accident insurance, the person seeking insurance exhibited, offered, and tendered to the company's soliciting and collecting agent, the full amount of the first annual premium for the policy, and the agent was owing the insured a sum less than the amount of the premium, and the agent told the insured to pay him, the agent, the excess of the premium over the amount owing by the agent to the insured, and he, the agent, would pay to the company the amount owing by the agent to the insured, and the insured, acting in entire good faith, paid the sum in excess of the debt owing by the agent to him, and relied, in good faith, upon the agent's statement, that he, the agent, would pay to the insurance company the remainder of the premium, this, in law, would be a sufficient payment of the premium by the insured; and the insured is not bound to see that the agent pays the money to the company, but he has the right to presume that it has been so paid, until he has notice to the contrary.

SAME.—*Authority of Agent.*—*Waiver.*—In such case the agent, acting in the general scope of his authority, had the power to waive the payment of the premium in several different installments, and to ac-

cept payment in advance, his powers in such matters being equal to the powers of the officers of the company at the home office.

SAME.—*Authority of Agent.—Special Limitation.—Notice of.*—In such case, if the party acts in good faith with the agent, relying upon the statements made by such agent, within the scope of his apparent authority, the principal will be bound by such statements, and if there is any limitation on the power of the agent, within the scope of the particular business, it is the duty of the principal to bring the same to knowledge of the applicant.

SAME.—*Contract.—Construction.*—The same principles of law ordinarily govern the construction of insurance contracts that govern the construction of other contracts.

Opinion on petition for rehearing by DAVIS, C. J.

From the Marion Superior Court.

*F. M. Finch* and *J. A. Finch*, for appellant.

*A. J. Beveridge*, for appellee.

DAVIS, J.—Appellant instituted this action against appellee, upon a certificate of membership issued to her husband, Isaac N. Kerlin, for the principal sum of three thousand dollars, in the event of his violent death by accidental means, conditioned upon his performance of all the stipulations, agreements and conditions contained in said certificate of membership and his application therefor, which is made a part thereof.

The application, made on the 18th of August, 1889, contains the following:

"I agree to pay annually, not to exceed $30, the amount assessed therefor, in advance, without notice, so long as I apply to the home office for its continuance, to be paid as follows: The first monthly payment, of $7.50, to be made on the 20th day of September, 1889, and one payment of like amount due the same day of each of the next succeeding three months, to be apportioned to the expense and indemnity funds, as provided in the charter and regulations of said association, and in default of any payment being made by 12 o'clock noon, of the day

when due, as above specified, said membership and insurance shall then and thereby become void, and can only be reinstated by tendering payment to the home office, and, if accepted, the reinstatement takes effect from and after the date of such payment, and no claim can be made for any injury occurring between the dates of such forfeiture and such reinstatement.''

On the same day the certificate was issued, containing, among others, the following provisions:

"This certificate shall not take effect unless payment is made or secured as agreed.    *    *    *

"In consideration of the facts and warranties in said application, and the agreement to fully perform all the provisions and conditions of this contract, all of which are conditions precedent.''

The appellee answered the complaint by general denial, and trial by jury resulted in verdict and judgment in favor of appellant for the full amount of the certificate.    On appeal to general term, the judgment was reversed, and from the decision of the superior court at general term this appeal is prosecuted.

Several questions are presented, in support of which numerous authorities are cited, but these questions are so related and interwoven with one another that the determination of one or two propositions will be decisive of the entire controversy.

The evidence is, in some particulars, conflicting and contradictory, but there is evidence in the record tending to show that said Isaac N. Kerlin was carrying a certificate in the National Accident Association, which was about to expire, and that one Disher, who was an agent of the appellee, with authority to solicit applications and to collect premiums, but who was not authorized to contract insurance or to issue policies, called to see Kerlin in regard to the renewal of such certificate.

Said Kerlin was a baggageman, running on a railroad from Indianapolis to Chicago, and. at the time the agent called on him he was in his car in the Union Station at Indianapolis, and the train was about ready to go. After the application had been written, but whether before or after it was signed, is not clear, and just before the train started, the agent asked Kerlin why he could not then pay all the premiums, as he had done before, to which Kerlin replied that he guessed he might, and said: "Just write up a new application," to which the agent replied that he had not the time, and that the application which he had written "would do just as well," and thereupon Kerlin replied "all right," and there tendered the agent thirty dollars—three ten-dollar bills—in payment of the entire premium for the year, and the agent in his testimony, says: "I told him *that I had ten dollars that he had loaned me a while back* that I would apply on it (the premium), and he could retain the ten dollars," and, therefore, the agent only took twenty dollars of the money so tendered, and gave to Kerlin a receipt for thirty dollars in payment of the premium in full, and agreed to pay the ten dollars to the company in discharge of his debt to Kerlin.

Disher, in October, paid $7.50 to the company, and the company, as the several installments became due, according to the terms of the application as written, each month gave to said Disher, as such agent, a statement or list of collections to be made by him from different members, including, among others, the name of Kerlin. Such statements were placed in the hands of Disher in September, October, November and December, and there is evidence tending to show that when the respective installments became due, according to the terms of the application, at the request of the agent, the time of

payment of the several amounts by Kerlin was extended by the company.

The company was not aware of the payment of the entire premium by Kerlin to Disher, and neither did Kerlin have any notice or knowledge of the failure of Disher to pay the full amount to the company, or of the alleged extensions in his behalf.

For some of these months, the list placed in the hands of Disher for collection amounted to as much as $145. Such collections were placed in his hands about the first of the month; he made the collections during the month and "used the money (so collected for the company) right along," until he made his return and settlement, about the first of the next succeeding month. This also appears to have been his manner of doing business for and as the agent of the company, previous to the renewal of the policy in question.

On or about the 31st of December, 1889, Kerlin was killed in a railroad accident, and a few days thereafter Disher reported to the home office that during the month he had collected one installment of the Kerlin premium, which he then offered to pay to the company, but the company, because of the death of Kerlin, refused to accept the money, etc.

One of the contentions of counsel for appellant is that the jury was warranted in finding for appellant, on the theory that inasmuch as the appellee did not declare a forfeiture for failure to pay the several amounts on the premiums in installments at the time prescribed in the application, but, on the contrary, extended the time of payment so that in December the agent had in his hands for collection one installment at least of said premium, which, when he made his return about the first of January, he reported that he had collected, and then offered to pay, the appellee had, by reason of such facts, waived

the alleged forfeiture, and that the insurance must be regarded as having been in full force at the time of the death of Kerlin.

The rule thus invoked is stated as follows: "Imposing or collecting an assessment by a mutual insurance company, after the company has knowledge of facts entitling it to consider the policy no longer binding upon it, without its assent, is, upon this principle, held to be a waiver of the right to claim the forfeiture which it might otherwise have insisted upon." *Murray* v. *Home Benefit Life Ass'n*, 90 Cal. 402, 25 Am. St. Rep. 133; · *Phenix Ins. Co.* v. *Tomlinson*, 125 Ind. 84.

Without entering upon the discussion of this proposition, it will suffice to say that in the view we take of the case, on the record, as it comes before us, the question has no controlling weight, so far as the decision of the court on this appeal is concerned.

The trial court gave the jury the following instruction: "If, at the time of the execution of the application by Mr. Kerlin, he exhibited, offered, and tendered to the defendant's agent the full sum of thirty dollars in cash as premium for the policy in question, and the agent was owing Mr. Kerlin ten dollars, and told the latter to pay him only the sum of twenty dollars cash on such premium, and he, the agent, would pay to the company the other ten dollars, and Mr. Kerlin, acting in entire good faith, paid the twenty dollars in cash and relied, in good faith, upon the agent's statement that the latter would pay to the defendant the other ten dollars, this, in law, would be a sufficient payment of the premium by Mr. Kerlin."

It is substantially conceded by the learned counsel for the respective parties, in their able oral argument, and also in their cogent briefs, that the vital question in the case turns upon the proposition as to whether the law

applicable to the facts in the case, which the evidence tends to establish, is correctly stated in the instruction quoted.    In other words, if the trial court erred, under the circumstances, in giving this instruction, the decision of the superior court in general term should be affirmed; otherwise, such decision should be reversed, with instructions to affirm the judgment rendered at special term.

It is first insisted by counsel for the appellee, that said agent had no right, at the time the application was made, to waive the payment of the different installments of the premium at the respective times, in the several amount. stipulated in the application; that in the face of the terms of the application, the company was not bound by his agreement that the entire annual premium of thirty dollars might be paid in advance; that Kerlin had no right to rely on the statement of the agent that it was not necessary to change or rewrite the application to correspond with the facts.    In short, that any and all such agreements or statements were merged into the written contract when the application was signed.    In this connection it should be remembered that Disher was authorized to solicit the insurance and to collect the premium, and that he might agree with the applicant, before or at the time the application was made, that the premium should be paid all in cash or in the future in installments.

It is well settled, as said by this court in a recent case, that "Where an agent, acting within the general scope of his authority, undertakes to make out an application for insurance, and fails to state therein such facts and circumstances as the applicant directs, which, if stated therein, would affect the rights of the assured under the policy issued therein, such omission must be imputed to

the company, and not to the assured." *Phenix Ins. Co.*
v. *Lorenz*, 7 Ind. App. 266, 33 N. E. Rep. 444.

So, if, at the time the application is made or the in-
surance is contracted, circumstances or conditions exist
which are in conflict with the terms and conditions of
the application or policy, and the agent of the company
knew of their existence, "and agreed that as to them the
conditions" of the application should not be effective,
the insurer can not take advantage of their existence to
defeat a recovery after loss has occurred. *Phenix Ins.
Co.* v. *Lorenz, supra; Howe* v. *Provident Fund Society*,
7 Ind. App. 586.

In his excellent work on Insurance, Mr. May, in
speaking of the powers of what are known as soliciting
agents, says: "In short, the agent may do in this be-
half what could be done at the home office, if the appli-
cation were filled up there upon conference with the of-
ficers." Sections 120 and 123, May on Insurance.

In our opinion, under the authorities cited, Disher, as
the agent of the company, had the right, on the occasion
in question, to do all that could have been done, in re-
lation to such matters, by the officers of the company at
the home office.

If it was conceded that Disher was, as contended by
appellee, a soliciting and collecting agent, he had the
authority to waive the payment of the premium in in-
stallments and to accept payment of the entire annual
premium in advance. His acts and his knowledge, in
respect to the matters in controversy, and within the
scope of his agency, on that occasion, are the acts and
knowledge of the company. When he assured Kerlin,
under the circumstances stated, that he could pay the
entire annual premium in advance, and that it was not
necessary to change the application, or write a new one
so as to make its terms, as to payment of the premium,

correspond with the facts, the company is bound by his statements and acts on that subject.

Coming to the principal questions presented, counsel for appellee states them as follows:

"First.—(a) Can an agent substitute his own indebtedness to the insured for the premium due the association?

"(b) Can the insured pay his premium due the association by cancelling the debt which he owes the agent?

"(c) Is the substitution of the agent's indebtedness to the insured, payment of the premium to the association?

"(d) Is the cancellation of a debt owed by an insurance agent to the person he insures, a payment of the premium, and does such an arrangement render the association liable?

"(e) Can a novation be effected without the consent of all parties?"

In support of his contention that an agent of an insurance company can not pay his debt to the insured by agreeing to pay the insured's premium to the company, and thereby bind the company without its consent or ratification, the learned counsel cites the following, among other, authorities: Ostrander on Insurance, p. 240; *Ferebee* v. *N. C. Mut. Home Ins. Co.*, 68 N. C. 11; *Texas Mut. Life Ins. Co.* v. *Davidge*, 51 Tex. 244; *Co-operative Life Assurance Co.* v. *McCormico*, 33 Miss. 233; *Hoffman* v. *Insurance Co.*, 92 U. S. 161; *Aultman & Co.* v. *Lee*, 43 Ia. 404; *Drain* v. *Doggett*, 41 Ia. 682; *Wheeler and Wilson Mfg. Co.* v. *Givan*, 65 Mo. 89; *Herring* v. *Hottendorf*, 74 N. C. 588; *Wiley* v. *Mahood*, 10 W. Va. 206; *Williams* v. *Johnston*, 92 N. C. 532; *McCormick* v. *Keith*, 8 Nev. 142.

It may be conceded that the foregoing authorities support the general proposition that the agent, in the ab-

sence of authority, either express or implied, can accept only money in discharge of the debt due his principal, and that he can not extinguish a debt to his principal by setting off against it his own debt; that he can not, in such cases, substitute his own indebtedness to the insured for the premium due from him to the association.

The question in this case is not, however, so narrow as stated by counsel for appellee, but the question which we are to determine is whether the actual tender of the full amount of the premium to the duly authorized agent of the company, under the circumstances referred to in the instruction, and the refusal of the agent to accept it, was sufficient to constitute payment of the premium, or, in other words, is the company, under the circumstances disclosed, bound or estopped by his waiver of the actual payment of the cash?

Counsel for appellee, however, while conceding that if the full amount of premium—$30—had been paid to the agent, the company would have been bound, although the agent might have used $10 of the money so received in paying his debt to Kerlin, says that "The fact that the insured has the actual cash in hand, and offers it to the agent, who is told by the agent to keep it in cancellation of the debt which the agent owes the insured, does not make it any more binding upon the association than if no tender had been actually made. It is not, in effect, payment. The agent must actually receive the cash or some equivalent which the association might convert into cash. Having done this, the agent is bound to pay the association, or the association can prosecute him for embezzlement."

Otherwise, it is urged, "A dishonest agent could make any arrangement he saw fit, swear to it, and bind the company."

In the first place, "the fair inference from the fact of appointment is, that the agent is a suitable person and conversant with his business. The applicant naturally and rightfully so looks upon him." May on Insurance, section 120.

Therefore, if an agent acting for an insurance company or association should possess the character described, the law would say, in the words of an old and terse expression, "for seeing somebody must be a loser by this deceit, it is more reason that he that employs and puts confidence in the deceiver, should be a loser than a stranger." *Hern* v. *Nichols*, 1 Salkeld, 289.

In the consideration of the question as to whether the general principles which underlie the authorities cited apply to the proposition which we have under investigation, we should keep in view the fact that the agent must be regarded and treated "as a suitable person," with power to act within the scope of his apparent authority.

Kerlin, within these limits, had the right to rely upon the statements and acts of Disher, and if he was, in fact, misled by the agent, as the result of which either the beneficiary in the certificate or the company must suffer, it is more reasonable that the appellee should be loser than the appellant. Also, it should be borne in mind that "life insurance is a cash business," and that Kerlin, for the reasons stated in the authorities hereinbefore cited, could not, without the consent of the company, pay the premium due the company, through a novation of parties, by the terms of which the debt owing to him by Disher was discharged, and the agent substituted in his place as debtor to the company. Further, it should not be forgotten that there was evidence tending to show that the agent "had ten dollars" which he had previously borrowed of Kerlin, and that Kerlin actually tendered

the agent, in cash, the full amount of the premium, of which the agent took only twenty dollars, and declined to accept ten dollars for the reason, as stated by him, in substance and effect, that the ten dollars which he had and the twenty dollars which he then accepted made the full amount of the premium for one year, and that he would pay the money to the company. Disher was the only witness who testified in relation to the transaction between him and Kerlin.

Appellee insists that the witness, on account of contradictory statements made out of court, his failure to pay over the money which he may have received, if any, and for other reasons, is discredited, and not worthy of belief. The question as to his credibility as a witness, and as to the weight which should be given his testimony on the trial, can not be reviewed by the court. These were matters proper for the consideration of the jury. Moreover, the appellee, through his long continuation in the service of the company, as solicitor and collector, may be said to have given him accredit to the public as a suitable and worthy agent for the transaction of the business in which he was engaged for the company, and, therefore, if it was within our province to do so, we would not be disposed, under the circumstances, to enter upon a review or analysis of the evidence as to his credibility as a witness.

Insurance companies act largely through agents who are appointed to facilitate and promote their business. Such agents must be presumed to be clothed with the power to transact the business which is intrusted to them, and the fair inference from their appointment is that they understand and are honest in the business in which they are engaged. If agents so appointed, with authority to solicit applications and to collect premiums, had not the authority to bind the company within the scope of

their employment, the business of insurance companies would be confined to the limited sphere of negotiations with those only to whom the home office is accessible. When agents so appointed, especially after being long continued in such positions, are not suitable, worthy, and reliable, the fault, if any, rests on the insurance company, who is responsible therefor, and not on the public. With these preliminary observations, we will proceed to an examination of the authorities relied on by counsel for the respective parties.

In *Halleck* v. *Commercial Ins. Co.*, 26 N. J. 268, it appeared that in March, 1855, and before and after that time, George W. Breck was a local agent at Bath, New York, of a foreign insurance company, with authority to make surveys, receive proposals for insurance, and to receive premiums upon risks accepted by the company, but was not authorized to make insurance or issue policies. Halleck applied to such agent for insurance, and was told what the insurance would be, which the applicant then offered to pay, and Breck said he would consider it as paid, but would leave it with the plaintiff, who was a banker and with whom the agent kept an account, till the policy arrived, when he, Breck, would call and get the money. Afterwards, and before the policy was delivered, and before the premium was paid, the property burned. One of the provisions of the contract was that no insurance should be binding until the premium was paid. The company, so far as appears, had no notice of the arrangement with the agent. The company refused to pay the insurance, because, among other reasons, the premium had not been paid. The court held that the company was liable.

In the course of the opinion the court said: "The case shows that the plaintiff, when he made his application, offered Breck the premium, who said he would con-

sider it as paid, but would leave it with the plaintiff, who was his banker, till the policy arrived, when he would call and get it. Would it have made the payment more real if the plaintiff had handed Breck the money, and Breck had deposited it with his banker?''

In the case at bar, we pause to ask whether it would have made the payment more real if Kerlin had handed the additional ten dollars to Disher, and Disher had paid it to Kerlin?

Continuing, the court said: ''The money was, in legal effect, paid to Breck, and by him placed in deposit. It was, in contemplation of law, an actual payment to the company, as much so as if Breck had transmitted the money, as well as the application, to the company. But if not an actual payment, the defendants are estopped from saying that it is not. They must be considered as doing what Breck did, viz., saying to the plaintiff on the 2d of March, when he tendered them the money, we will consider it as paid. *New York Central Ins. Co.* v. *National Protection Ins. Co.*, 20 Barb. 468.''

In this connection it is proper to remark that it is immaterial whether Disher was a general agent or whether he was simply a soliciting and collecting agent. If only the latter, he had, as we have seen, full authority to do all that could have been done at the home office in regard to the matters here in difference. A general agent, we apprehend, would not have had power to do more in this respect. He seems to have been an agent clothed with full power to solicit applications and to collect premiums in this territory. The questions which we are considering relate to the application and to the alleged payment of the premium then made. Within the scope of the business intrusted to him he had, so far as the record

discloses, all the authority that a general agent could have exercised in the same matter.

In the case of *Chickering* v. *Globe Mut. Ins. Co.*, 116 Mass. 321, the agent was indebted to the insured and told him he would take care of the premium for him. The insured thereafter died before the premium was paid. The policy provided that the failure to pay the premium should work a forfeiture of the insurance.

The court, in discussing the matter, says: ''It is not contended that the fact, that the premium had become due, was forgotten by the assured, or that the necessity of prompt and punctual payment was overlooked.''

This sentence, under the evidence, will apply with equal force to the case in hand.

Continuing, the court in the above case, says: ''It is clear on the evidence that an arrangement of some sort was proposed and discussed for the purpose of meeting that necessity, and the jury might have found from the evidence that Chickering not only relied upon that arrangement, but had every assurance that it had been carried into effect.''

So, we might add, the jury evidently found in this case.

In *Mississippi Valley Life Ins. Co.* v. *Neyland*, 9 Bush, (Ky.) 430, the court says: ''The weight of modern authority is that a general agent of an insurance company, whose business it is to solicit applications for insurance and receive the first premiums, has the right to waive the condition requiring the payment in money, and to accept the promissory note of the applicant or of a third party in lieu thereof, or to undertake to make the payment to the company himself, and that when the cash payment is actually waived in either of these modes the contract binds the company, notwithstanding the recital in the policy that it is not to be binding until the cash

portion of the first premium is actually paid in money. *Galt* v. *National Protective Ins. Co.*, 25 Barb. 189; *Boehen* v. *Williamsburg Ins. Co.*, 35 N. Y. 131; *Sheldon* v. *Connecticut Mutual Life Ins. Co.*, 25 Conn. 207.

"The powers of these general agents are *prima facie* co-extensive with the business intrusted to their care, and while acting within the scope of their duties and apparent authority parties dealing with them have the right to presume that they can waive any of the conditions of the contract that might be waived by the principal officers of the corporation."

We also quote from *Wooddy* v. *Old Dominion Ins. Co.*, 31 Grattan (Va.) 362, as follows: "Rowzie (the agent) says that when the twelve dollars and fifty cents, the amount of the premium, were tendered to him, he is clear in his recollection that he at the time owed the appellant that amount for rent past due. If he had then paid over that amount to appellant in discharge of the rent due, and the appellant had immediately handed it back to him for the premium, nobody will doubt that the premium would have been actually paid."

So in the case at bar, if Disher had paid to Kerlin the ten dollars he was owing him, and Kerlin had then handed the ten dollars back to Disher, the entire premium, if Disher is believed, would have been paid. See, also, *Lycoming Fire Ins. Co.* v. *Ward*, 90 Ill. 545.

In the opinion of the court in the case of *New York Life Ins. Co.* v. *McGowan*, 18 Kan. 300, we find the following: "As to the first objection, it is sufficient to say that the application was made to and accepted by an authorized agent of the company. The note was given and accepted as payment. An agent of an insurance company whose business it is to solicit applications for insurance, and receive the first premiums, has the right to waive the condition requiring the payment in money." To the same

general effect are: *Southern Life Ins. Co.* v. *Booker,* 9 Heisk. (Tenn.), 606; *Sheldon* v. *Connecticut Mutual Life Ins. Co.,* 25 Conn. 207; *Home Ins. Co.* v. *Gilman,* 112 Ind. 7; *Jones* v. *Ætna Ins. Co.,* (U. S. C. C. Mass.) 8 Ins. L. J. 415; *Hartford Life, etc., Ins. Co.* v. *Hayden* (Ky.), 13 S. W. Rep. 585; *Gerbich* v. *Amazon Ins. Co.,* U. S. D. C., Ohio, 4 Ins. L. J. 240; May on Insurance (3d ed.), section 134, and other authorities there cited.

In *Root* v. *Ross,* 29 Vt. 488, the agent of the debtor took money to the attorney of the creditor for the purpose of paying the debt. A dispute arose as to the correct amount tendered and the money was handed to a bystander to count, said bystander being an officer who, at the time, held a writ of attachment against the creditor. The officer counted it, found the amount and then attached it as the property of the creditor. The attorney of the creditor refused to consider the transaction as payment. But it was held to constitute payment, even though it was shown that there was connivance between the agent of defendant and the party who attached the money.

Counsel for appellee, as we have before said, insist that to constitute payment in this case the money, thirty dollars, should actually have been delivered by Kerlin to Disher for the purpose of extinguishing the debt to the company, and that the agent must have received it for the same purpose. His farther contention may be best stated in his own words, which we quote from printed brief as follows:

"The question of waiver.

"It can not be said that Disher's agreement to pay the company, upon Kerlin's cancellation of the debt due him from Disher, was a waiver.

"In *Cronkhite* v. *Accident Ins. Co.,* 35 Fed. Rep. 26, payment of the premium was not made when due, and

the general agent of the company extended the time. At the expiration of this time the insured, in company with the soliciting agent, tried to find the general agent and pay the premium. But they could not find him. The soliciting agent told the insured that he, the soliciting agent, would pay the company and look to the insured to reimburse him. But the soliciting agent did not pay the company. The insured, having been injured thereafter, brought suit on the policy, and Judge Brewer, now on the Supreme Bench of the United States, held that the insured could not recover because the arrangement between the insured and the soliciting agent of the company, whereby the latter agreed to pay the company instead of the former, who would thus become indebted to the latter, was not payment of the premium.

"In *Bane* v. *Travelers' Ins. Co.*, 85 Ky. 677, the insured was in the employ of a railway company, and, in consideration of his policy, assigned to the insurance company his claim on the railway company for wages still to be earned. Part of this was paid by the railway company. The insured quit work and the remainder of the claim remained unpaid by the railway company. The insured began work again for the railway company, and had ten dollars due him from the company at the time of injury, which the insurance company had not collected. Neither had the insurance company demanded such amount from the railway company, nor had it notified the insured of its nonpayment. The insured was injured and brought suit on his policy. The court held that although the company had accepted the assignment of the claim of the insured against the railway company, and although the railway company had money in its possession due the insured, nevertheless, such an arrangement was not payment, and the policy was forfeited.

"In *Belleville Mut. Ins. Co.* v. *Van Winkle*, 1 Beas.

(N. J.), 333, Van Winkle applied to the insurance company for insurance on his property. The company stated its terms and Van Winkle accepted them. Van Winkle had some money owing him by the company, and this much was applied on the premium. Van Winkle offered to make out his note for the remainder (a note being the usual method of paying the company), but the agent told him not to do so, as he did not know how much the balance would be, but that he would let Van Winkle know right away, and Van Winkle could then give the necessary note. Van Winkle asked the agent if he, Van Winkle, was insured, and the agent replied: 'Most certainly you are. I shall make out the policy and send you at once.' Before this could be done, or the note given, the property was destroyed. The court held that Van Winkle could not recover.

"In *Buffum* v. *Fayette Mut. Fire Ins. Co.*, 3 Allen (Mass.), 360, the laws of the company provided for payment of the premium before the company was bound. The insured obtained delays from the president and treasurer of the company until April. Upon the day when payment was due, according to such extension, insured called at the company's offices and asked further extension. The treasurer told him that he, the treasurer, would be responsible, and that the insured might pay him. The court held that under such an arrangement the company was not liable. On page 361, the court says: 'Nothing was actually received, nor did Chadwick [the treasurer] make himself liable to the company, so that they could have charged the sureties on his bond for the amount of the premium. * * * It is quite obvious that Chadwick did not, as agent of the company, agree that he would use their funds to pay this premium. But it was in his private capacity that he agreed to advance the money. And though he was treasurer, his private

agreement would not bind the company. If he made a valid agreement in his private capacity, the remedy would be against him if he violated it; and no claim against the company could arise out of it.'

"In *Garlick* v. *Miss. Valley Ins. Co.*, 44 Ia. 553, the policy provided that the insurance should not be operative while any part of the premium or premium note remained unpaid after due. After one payment became due, the insurance company urged payment, part of which was made and accepted. Thereafter the loss occurred. The court held that the plaintiff could not recover, and that the acceptance of part of the premium after it was due was no waiver. The policy also provided that the insurance should be terminated upon the company's giving notice to the insured and refunding a ratable portion of the premium. This the company failed to do; held, nevertheless, that the company was not liable. The secretary of the company informed the insured that the company was liable, which statement put plaintiff at his ease, and he relied upon it. The court held that this was no waiver. On page 554, the court says: 'The premium note being past due and partly unpaid at the time of the loss, we must hold that the policy was suspended under the provisions of article 14, unless the provisions creating such suspension were waived by the defendant. * * After the maturity of the premium note, the plaintiff paid the defendant a part thereof. It is contended by the plaintiff * * that the receipt of such payment by the defendant must have had the effect to restore the policy to operation, because otherwise the defendant would receive plaintiff's money without rendering any return or consideration therefor. To this it may be replied that part payment of the note should have no greater effect than part payment of an original cash premium, where,

by contract, full payment is made necessary to put the policy in operation.' "

There is great force in the reasoning in these authorities. It will be observed that in many instances they are not in harmony with the authorities hereinbefore cited. In some respects the authorities can not be reconciled, but as applied to the facts in this case, we regard the differences, as a rule, as being more apparent than real. For instance, in none of the cases relied on, cited by counsel for appellee, was there an actual tender by the insured of the full amount of the premium, in money, to an agent or officer of the company authorized to receive it. In this case, the tender of the three ten-dollar bills must be regarded by this court as having been made for the purpose of paying the annual premium of thirty dollars in full. The agent to whom the tender was made, and who, as we have seen, was authorized to make the collection, declined to receive it. He stated, on the contrary, in substance, to the insured, I have in my hands ten dollars which you loaned me, therefore I shall only take twenty dollars of this money, which, with what I owe you, will make the thirty dollars, the full amount of the premium. We must assume, so far as the instruction in question is concerned, that Kerlin acted in entire good faith; that he made no effort to secure such an adjustment; that he entered into no agreement which by inference, or otherwise, could be construed as a fraud on the rights of the company. Then the inquiry arises, what more could Kerlin have done? He certainly was not required to desert his post of duty and go to the home office to pay the ten dollars which the agent had refused to accept. He was assured by the agent, the representative of the company, that so far as he was concerned the premium was paid. It was not his duty to

see whether twenty dollars or thirty dollars or any other amount was paid by the agent to the company.

In conclusion, as applied to the facts and circumstances of this case, concerning which, so far as relates to this question, there is absolutely no dispute or controversy (except as to certain alleged contradictory statements of the agent made out of court, and his want of credit as a witness for the reason urged, to which we have hereinbefore briefly referred), we are of the opinion, after patient and careful investigation and examination, that there was no error in giving the instruction hereinbefore set out, for which the judgment of the trial court should be reversed.

Other questions ancillary to the one we have decided are discussed, but if we are right in the conclusion above stated, there is nothing presented in the discussion of any such questions which would justify a different result than the one we have reached.

The decision at the general term is therefore reversed, with instructions to affirm the judgment rendered at the special term.

Ross, J., absent.

Filed Oct. 19, 1893.

## ON PETITION FOR A REHEARING.

DAVIS, C. J.—The learned and eloquent counsel for appellee has filed an able, earnest, and interesting brief in support of his petition for a rehearing in this case, and, at the risk of being prolix, we will review the questions presented.

The certificate constitutes the contract on which the rights of the parties must be determined, except in so far as the parties or their authorized agents may have waived or modified the terms thereof. In this case, however, there is no claim that there was any waiver, change,

or modification of the terms of the certificate, either before or after it was issued, except such as are necessarily incident to or grow out of what took place between Disher and Kerlin when the application was written and the premium was paid or waived before the certificate was issued.

The court has neither power nor inclination to change or overthrow the contract entered into between Kerlin and the company, nor to make a new one for the parties.

Counsel is in error, in our judgment, in assuming that the courts of the country are holding that there are no rights, in behalf of the company, in an insurance contract which any body is bound to respect. Counsel is also mistaken in the assertion that notwithstanding every provision of the contract is violated by the insured, the claimant under the policy is allowed to come into court and recover. Corporations have the same rights under the law as individuals. They are entitled to neither more nor less consideration. All, the rich and the poor, the strong and the weak, the high and the low, stand equal before the law. Accident and life insurance companies, it may be conceded, when properly managed and conducted, in harmony with the spirit of the better class of such organizations, are beneficent institutions. The same principles of law ordinarily govern the construction of insurance contracts that govern the construction of other contracts. The law applicable to agents of insurance companies stands upon the same footing as the law applicable to agents of other persons and corporations.

It is insisted that the court has not taken into consideration "the actual policy contract in this particular case."

That part of the contract to which reference is made is set out, and was considered in the original opinion. It

will be observed that the language, "the company shall not be liable by virtue of the policy until the premium therefor be actually paid," in the policy, in *Home Ins. Co.* v. *Gilman, Exr.*, 112 Ind. 7 (12), is fully as strong as the provisions on this subject in the certificate in this case.

It is next urged that the court erred in holding that under the contract the insured could make any arrangement with Disher waiving any requirement of the contract.

The controling questions in the decision of this case are predicated on the proposition that Disher was the authorized agent of the company to solicit insurance and to collect premiums, with power to agree as to the time when the same should be paid, whether in several installments, as written in the application by him, or in one payment, in advance, as agreed to between the parties on that occasion, which the agent failed to reduce to writing, and in agreeing on such terms as to the time of payment, as were agreed upon in this case, and in writing the application, he was acting for and in behalf of the company, and all he did at that time in relation to the change of the time of the payment, and his statement that it was not necessary in consequence of such change as to when the payments should be made, to rewrite or change the application to correspond therewith, were binding on the company, and this underlying principle must be kept in view in considering what has been and will be said by the court in this and the original opinion. *Howe* v. *Provident Fund Society, supra*, and other authorities cited in original opinion.

It should also be borne in mind that the arrangement to which exception is taken was made before the policy or certificate was issued and delivered. *Crouse* v. *Hartford Fire Ins. Co.*, 79 Mich. 249; *Zell* v. *Herman Farm-*

*ers' Mut. Ins. Co.*, 75 Wis. 521, and authorities cited *supra*.

Moreover, the general rule, as we understand it, is that ordinarily a party, acting in good faith, dealing with an agent, in such cases, may rely upon the statements made by such agent within the scope of his apparent authority, and that the principal will be bound by such statements, and if there is any restriction or limitation on their power, as such agents, within the scope of the particular business in which they are engaged, it is the duty of the company to bring the same to the knowledge of the applicant.    Section 126, May on Insurance; *Howe* v. *Provident Fund Society, supra.*

What was said by Judge MITCHELL, in the Gilman case, is applicable here:    ''For all that appears, the assured was fully justified in presuming that the agent was authorized to make the arrangements disclosed.''

We quote further from language cited by Judge MITCHELL with approval in that case:    ''If the agent be authorized to receive the premium, an agreement between the assured and the agent that the latter will be responsible to the company for the amount, and hold the assured as his personal debtor therefor, is a waiver of the stipulation in the policy that it shall not be binding until the premium is received by the company or its accredited agent.''

It will be observed that we do not, in this opinion, go to the extent which the language quoted seems to sanction.

In this case the company sent its trusted representative, with authority to solicit the insurance and to collect the premiums, to Kerlin, who tendered to the agent thirty dollars, the full premium, in pursuance of the agreement, but the agent accepted twenty dollars only of the amount and refused to take ten dollars of the money

because he had ten dollars which he had previously borrowed of Kerlin, and thereupon assured Kerlin that the full amount should be regarded as paid, and that he would pay the thirty dollars to the company.

The certificate was thereupon issued by the company and delivered to Kerlin, but the agent concealed the facts we have just mentioned from the company, and only paid to the company seven dollars and fifty cents of the amount received by him.

Now, it will be observed, we did not hold, in the original opinion, that Disher was a general agent, but what we did decide on this question was, that acting within the scope of his authority he did, under the circumstances of this case, have power to waive the payment of the premium in several different installments and to accept payment in advance, that is to say, he had the right to solicit the insurance and to agree with the applicant as to whether the annual premium should be paid in one or several installments. Neither did we hold, as counsel seem to think, that an agent may discharge his debt to the insured by agreeing to stand in his place with reference to his indebtedness to the company, without the latter's knowledge or consent. What we did decide, was that when an applicant for insurance offers and tenders, to an agent of the company who has authority to solicit the insurance and to collect the premiums, as hereinbefore stated, at the time the application is made in good faith, the full amount of the premium, in accordance with the terms of the agreement, and the agent accepts a part of the money so tendered, and refuses to take the residue on the ground that he has in his hands such amount, previously borrowed of the applicant, and agrees to regard the entire amount of the premium as paid by the applicant and to pay the money so had and received by him to the company, and the

certificate is afterwards issued and delivered to the applicant, the applicant is not bound to see that the agent pays the money to the company, but he has the right to presume that it has been so paid, until he has notice to the contrary.

It should be borne in mind, in considering these questions, that Kerlin was not responsible for the failure of the agent to write the application as to the terms of payment of the premium, in accordance with the agreement in reference thereto, between him and the agent. See *Howe* v. *Provident Fund Society*, *supra*, and authorities there cited.

If we are correct in this position, the payment of the twenty dollars to Disher was binding on the company, and, if this is also true, it occurs to us that the logical conclusion is that the refusal of the agent to accept the ten dollars when tendered was a waiver of the payment of that part of the premium as a condition precedent to the taking effect of the policy or certificate.

In view of the subsequent delivery of the certificate to the insured, these facts, under the circumstances, should, in our opinion, be regarded as the equivalent of the payment of the entire premium when the application was made, in pursuance of the understanding between the agent and insured that the full premium should be so paid in advance, at least until the insured had notice that such payment or arrangement was not satisfactory to the company.

The original opinion was, we thought, sufficiently specific on these questions, and whether we have more clearly expressed our ideas in these additional remarks, the profession will determine.

Our reasoning and conclusions throughout are limited and applied to the facts and circumstances which constitute the foundation of this case, and, on careful review of

the argument of counsel, we are not able to see how a different conclusion could be reached in this court.

On the question of the cancellation of the policy, a reference to the original opinion will show that what we said on that subject was in response to the argument of counsel for appellant, and, as we did not reach a conclusion thereon, it is not necessary to prolong this opinion in reference thereto.

The petition for a rehearing is overruled.

Filed Jan. 13, 1894.