## WEST *v.* NATIONAL CASUALTY COMPANY.
### [No. 8,747.   Filed April 4, 1916.]

1. TRIAL.—*Directing Verdict.*—The direction of a verdict for defendant is not proper unless there is a total absence of evidence upon some issue or fact essential to recovery by plaintiff, or unless the evidence is without conflict and, when considered in its entirety, with all reasonable and legitimate inferences which the jury may properly draw therefrom, is susceptible of no other inference than that necessitating the directing of the verdict.   p. 483.

2. INSURANCE.—*Forfeitures.*—Forfeitures of right to insurance are not favored in the law, and will be enforced only where there is the clearest evidence that such was the intention of the parties. p. 489.

3. INSURANCE.—*Forfeiture.*—*Estoppel.*—Where an insurance company, by its course of dealings with the insured and others known to the insured, has induced the belief that so much of the contract as provides for a forfeiture in a certain event will not be insisted on, the company will not be allowed to set up such forfeiture. p. 489.

4. INSURANCE.—*Forfeiture.*—*Estoppel.*—*Time of Paying Premiums.* —Where an insurer by any agreement, either express or implied from its acts and conduct, causes the insured to honestly believe that it will receive the premiums after the time fixed in the policy and keep the policy alive, it is thereby estopped from asserting a forfeiture provided in the policy for failure to pay at the specified time, on account of a delay in payment induced by such agreement and the premiums paid and received in accord therewith. p. 490.

5. INSURANCE.—*Forfeiture.*—*Estoppel.*—*Power of Agent.*—*Extending Time of Paying Premiums.*—Under the rule that a principal is charged with any act or contract of the agent within the general

scope of his apparent authority, the agent of an insurance company having authority to accept payment of premiums and issue renewal receipts, thereby in effect extending or renewing the policy for the period covered by the renewal receipt, necessarily has authority to extend the time of payment of such renewal premiums, notwithstanding a stipulation in the policy to the contrary, so as to estop the company from asserting a forfeiture grounded on a failure to pay at the time provided in the policy, induced by the acts and conduct of such agent. pp. 492, 495.

6. INSURANCE.—*Provisions of Policy.*—*Waiver.*—The express provisions in a policy of insurance that no agent has authority to change the policy or waive any of its provisions, may be waived by an agent of the company acting within his actual or apparent authority. p. 493.

7. INSURANCE.—*Knowledge of Agent.*—The knowledge of an insurance agent acquired while acting for his company in connection with a matter in which he is authorized to act, will be imputed to the company. pp. 494, 495.

8. INSURANCE.—*Renewal Premiums.*—*Extending Time of Payment.* —*Injury Before Payment.*—The fact that payment for the monthly renewal premium was made after the insured was injured did not destroy his right to make it under an arrangement with the agent, pursuant to which he had for a long time been acting, that payments might be made at any time before the tenth of the month, especially in the absence of any evidence of collusion or fraud between them, or that he had before the injury determined that he would make no more payments. p. 498.

9. INSURANCE.—*Renewal Premiums.*—*Condition of Receipt.*—*Jury Question.*—Whether insured's renewal premiums were received, and his insurance continued, under a clause of the policy providing for temporary suspension of liability if such premium was not paid at a specified time, or whether they were paid and received under an arrangement waiving strict compliance with the policy as to time of such payments, is a question for the jury; the evidence thereon not being undisputed. p. 498.

From St. Joseph Superior Court; *Samuel Parker,* Judge *Pro Tem.*

Action by Frank West against the National Casualty Company. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*Slick & Slick,* for appellant.

*Gaylord H. Case* and *Philip H. Quinlan,* for appellee.

HOTTEL, J.—This is an appeal from a judgment in appellee's favor in a suit brought by appellant on an industrial insurance policy. The complaint is in two paragraphs. The averments of the first paragraph are in substance as follows: On July 6, 1910, appellee, by its policy of insurance for the consideration therein provided, insured appellant for one month from the date of such policy, and "for such further monthly periods, stated in the renewal receipts as the payment of premiums specified in said receipts would maintain said policy in force." By such policy appellee promised that in the event of an injury to appellant caused in the manner and resulting in the disability therein provided, appellee would pay to appellant the sum of $50 per month so long as appellant should be so disabled, and for any partial disability of the character mentioned in the policy $25 a month during the continuance thereof, not to exceed six months; that such policy is made part of the complaint as exhibit "A"; that thereafter appellant continued such policy in force by continued payment of the renewal premiums until his injury as hereinafter described; that such premiums were paid to W. A. Hyslop, appellee's agent at Boyne City, Michigan, who issued to appellant renewal receipts therefor; that the renewal receipt for the month of July, 1912, is attached to and made part of the complaint and marked exhibit "B"; that, after the execution of the policy of insurance, it was agreed between appellant and Hyslop that the renewal premiums on said policy would be received by him, Hyslop, in appellee's behalf, "at any time before the 10th day of each calendar month, on which date the amount is remitted" to appellee; that appellant thereafter in compliance with such under-

standing paid to Hyslop the monthly premiums on said policy at various times between the first and tenth of each calendar month; that the monthly renewal premiums for the months of April, May and June of the year 1912, were paid for each of said months respectively as follows, viz., the April premium was paid April 8, the May premium May 8, and the June premium June 10, 1912; that these premiums were each accepted by Hyslop and appellee, and renewal receipts were issued to appellant therefor by Hyslop which receipts are in all respects, except as to date, identical with exhibit "B" hereto attached, and were each antedated, that is to say, each of said receipts was dated back to the first of each month respectively; that the renewal premium on the policy for the month of July, 1912, was paid by appellant to Hyslop and appellee on July 7, 1912, and Hyslop thereafter, and in behalf of the company, issued its renewal receipt therefor to appellant which is herewith attached and marked exhibit "B"; that Hyslop did not antedate such July receipt back to the first day of July, but dated it July 13, which was six days after its actual receipt by him; "that on said seventh day of July, and for several months prior thereto, this plaintiff relied upon the practice and custom of said Hyslop and defendant of receiving renewal premiums on the policy at any time before the tenth of each calendar month, and was induced by said practice and custom to believe, and at said time did believe that defendant would receive and accept his premium on the policy at any time before the eleventh of each calendar month, without issuing a renewal receipt for such payment, and continue the policy in full force and effect from the first of each calendar month." Averments follow showing that on July 8, 1912,

appellant received a personal injury caused by external, violent and accidental means, and showing the character of the injury, the disability resulting therefrom, the notice given to appellee; that appellant performed all the conditions of the policy on his part to be performed, etc., which averments have no controlling influence on the questions presented by the appeal, and hence are not set out.

The second paragraph is practically the same as the first, except that it alleges that the payment of the July renewal premium was made on July 8, 1912, and that on July 10, 1912, and for several months prior thereto it was appellee's practice and custom to accept monthly premiums on said policy and to issue renewal receipts therefor at any time before the tenth of each calendar month, and thereupon to continue such policy in force and effect; that appellant relied on such custom and was induced thereby, etc., continuing substantially as the first paragraph.

A demurrer to each paragraph of the complaint was overruled. There was an answer in denial and an affirmative answer, to which there was a reply in denial. The cause was submitted to a jury and at the conclusion of the evidence, the trial court peremptorily instructed the jury to find for appellee, which it did. Appellant filed a motion for new trial which was overruled and this ruling is assigned as error and relied on for reversal. This motion contains two grounds, each of which, in different form, predicates error on the action of the trial court in giving the peremptory instruction. It is well settled by the decisions of both the Supreme

1. Court and this court, that such an instruction, in favor of the defendant, is never proper or authorized except in cases where there is a

total absence of evidence upon some issue or fact essential and necessary to the plaintiff's right to recover, or where there is no conflict in the evidence, and, when considered in its entirety, such evidence, with all reasonable and legitimate inferences which the jury might properly draw therefrom, is susceptible of but one inference, viz., an inference which necessitates the verdict so directed. *Lyons* v. *City of New Albany* (1913), 54 Ind. App. 416, 421, 103 N. E. 20, and cases cited; *Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413, 425, 73 N. E. 899; *Patterson* v. *Southern R. Co.* (1913), 52 Ind. App. 618, 620, 99 N. E. 491; *Premier Motor Mfg. Co.* v. *Tilford* (1916), *ante* 164, 111 N. E. 645. Appellee, in effect, concedes the law to be as above stated, and insists that the evidence in the instant case fails to establish a fact necessary and essential to appellant's right to recover, viz., that it fails to show that appellant performed the condition of the contract of insurance on his part to be performed, which required the monthly premiums to be paid on the first day of each calendar month, and that by such failure to pay his premium on July 1, 1912, appellant forfeited his right to recover on such policy, for an accidental injury resulting to him, July 8, following.

The evidence on this branch of the case is practically undisputed and consists of the policy of insurance, the application therefor, the four premium renewal receipts issued by appellee on the policy in question for the months of April, May, June and July, 1912, respectively, a letter from appellee to appellant, a letter from appellee's agent Hyslop to appellant, and the oral evidence of appellant, his wife, and attending physician. The policy bears date July 6, 1910, and its provisions

affecting the question presented by this appeal are as follows:

"(T) The premiums hereon must be paid either at the Home Office of the company, Detroit, Michigan, or to a person designated in writing by an officer of the company to receive them; and if paid to any other person, such payments shall not be binding on the company. (U) No agent has any authority to change this policy or to waive any of its provisions, conditions or limitations. Notice to or from any agent, or any knowledge, promise or statement made by him, or understanding with him, shall not be held to effect a change or waiver of any of the provisions, conditions, or limitations hereof. (W) If the payment of any renewal premium shall be made after the expiration of this policy, or of the last renewal receipt, neither the assured nor the beneficiary will be entitled to indemnity for any accidental injury happening between the date of such expiration and noon (Standard Time) of the day following the date of the receipt of such renewal payment at the Home Office; nor any illness originating before the expiration of thirty days after the date of such renewal payment. The acceptance of any renewal premium shall be optional with the company. * * * No assignment or change of this policy or waiver of its provisions shall be valid unless agreed to in writing by the president or secretary of the company and endorsed thereon."

The provisions of the application affecting the question presented are as follows:

"If any condition or provision required by such contract shall not be fulfilled * * * then the contract shall be null and void and all money paid thereon, shall be forfeited to the company, and I agree that my acceptance of the policy hereon issued shall be evidence of my

acquiescence in all the statements, agreements and warranties herein set forth, and that the company shall not be bound by statements, made to or knowledge acquired by agents or solicitors, nor by any statement made by any agent or solicitor, not written in this application * * * I further agree to accept the policy subject to its provisions, conditions (and) limitations."

The renewal receipt, exhibit "B," for the month of July is as follows:

"This receipt is not valid unless dated and countersigned by the agent authorized to receive the premium as per notice sent by the company. $300,000 Capital and Surplus. $100,000 deposited with the State Treasurer for the Protection of Policy Holders. National Casualty Company, Detroit, Michigan. Received of Frank West the sum of two—60-100 dollars, continuing in force Policy No. C218466 for the term of one months, from noon, Central Standard time, of July 1, 1912, provided that the statements and warranties in the original application were true when made, and are true to this date. National Casualty Company, H. S. Curtis, Treasurer. Countersigned at Boyne City. Date July 13, 1912. W. A. Hyslop, Agent. Premiums accepted subject to the conditions of the policy."

The renewal receipts for April, May and June are identical with that of July, *supra*, except as to date from which insurance is continued and date of countersigning. Each of these dates on each receipt is the first of the respective months for which the premium was paid.

The letters from appellee and Hyslop are as follows:

"July 22, 1912, Frank West, Mishawaka, Ind. Dear Sir: We have your claim before

us and beg to say that *we have just ascertained from Mr. Hyslop, the collector, that you did not pay your premium until the 10th of July*, and as you were hurt on July 7th you are, therefore, not entitled to benefits because you were not insured at the time of your injury; consequently, we can not favorably consider your claim. Yours very truly, National Casualty Company, J. L. Hepburn." (Our italics.)

"Boyne City, Mich., 7/25, 1912. Mr. Frank West, Mishawaka, Ind. Dear Frank: Replying to yours of July 23rd, will say I received a letter from the company a few days ago saying they had received notice of a claim from you *but hadn't received my July report as to whether you had paid your July premium.* My report passed their letter on its way to Detroit. I wrote them giving dates when your remittance was received *which of course appeared on report as well* (our italics) I also said your remittance to me was mailed in your town July 7th as near as I could remember. Of course strictly speaking your remittance should reach me by the first of each month to keep you in good standing. *My report rarely leaves here before the 10th of each month— finding it a hard job to make my collections before that time,* but I am not sure the company holds them in good standing till the report is made. They may consider your policy had lapsed. I am merely a collector—having nothing whatever to do with adjustment of claims. I can't see however, why they don't answer your letters & feel sure they will & I also hope your claim will be recognized & a satisfactory adjustment made. Yours, W. A. Hyslop."

The oral evidence of appellant affecting the question involved is as follows: "The policy in suit was obtained from appellee's agent, Ira Hilton, and the first premium was paid to him. After this, all premiums were paid to W. A. Hyslop.

On the second of the month after taking out the insurance I went to Mr. Hyslop and tendered him the monthly premium and he refused to take it saying that '*he had no blanks for receipts, and that any time from the first to the tenth of the month was suitable for the premium because he didn't send in his statement until then.*' After this I paid my premiums to Mr. Hyslop and paid them *all the way from the first to the tenth* of each month, and he always sent me a receipt. The premiums for the months of April, May and June, 1912, were each respectively paid by a money order mailed to Hyslop at Boyne City from Newberry, Michigan, on the following days of each of said months, repectively viz., April 8th, May 8th and June 10th, 1912. The premium for July, 1912, was paid on July 8th by money order sent through the mail from Mishawaka to Boyne City. The distance between Mishawaka and Boyne City is 350 or 400 miles. In ordinary course of mail it takes a letter about a day to go from one city to the other. I was injured on July 7, 1912, and notified appellee on July 9, 1912. [Witness identifies letters, *supra*, as letters received by him.] At the time the policy was written, Mr. Hilton, to whom the first premium was paid, told me to make my payments to Mr. Hyslop. The way I know that, the May premium was paid on May 8th, I have a duplicate in the post office at Newberry showing when all these receipts were paid * * * Mr. Slick [appellant's attorney] has it. I know it was paid after the first because I made a practice of doing that. I think I had the conversation with Mr. Hyslop as to when I should pay premiums when I went to pay my second premium in August, 1910." Appellant's wife testified to sending the premiums for July, June and May, 1912, in the manner and

on the days testified to by Mr. West, *supra*. The only evidence on behalf of appellee was that of appellant in which he admitted that appellee offered to refund to him the July premium and that he did not accept it; also the receipt of the clerk of the court for $2.60 as a tender of such premium.

Does this evidence conclusively show that appellant, prior to his injury forfeited his right to insurance under his policy? Upon this question, appellant has in his favor the fact that forfeitures are not favored in the law. Indeed, as a general rule, results flowing therefrom are regarded as so odious that a forfeiture will be enforced "only where there is the clearest evidence that such was the intention of the parties," and to avoid such odious result, the courts "are not slow in seizing hold of such circumstances as may have been acted on in good faith and which indicate an agreement on the part of the company, or an election to waive strict compliance with the conditions and stipulations in the policy." 2 May, Insurance (4th ed.) §361; *Michigan Mut. Life Ins. Co.* v. *Custer* (1891), 128 Ind. 25, 29, 27 N. E. 124; *Majestic Life, etc., Co.* v. *Tuttle* (1915), 58 Ind. App. 98, 108, 107 N. E. 22; *National Masonic, etc., Assn.* v. *McBride* (1904), 162 Ind. 379, 381, 70 N. E. 483; *Farmers Mut. Fire Ins. Co.* v. *Jackman* (1905), 35 Ind. App. 1, 17, 73 N. E. 730; *German Fire Ins. Co.* v. *Pitcher* (1903), 160 Ind. 392, 395, 64 N. E. 921, 66 N. E. 1003; *German Mut. Ins. Co.* v. *Niewedde* (1894), 11 Ind. App. 624, 39 N. E. 534. It is well settled that "where one party has by his representations or conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert he will not, in a court of justice, be

permitted to avail himself of that advantage,'' and where an insurance company, by its course of dealings with the insured and others known to the insured, has induced a belief that so much of the contract as provides for a forfeiture in a certain event, will not be insisted on, the company will not be allowed to set up such forfeiture as against one in whom their conduct has induced such belief. 2 May, Insurance (4th ed.) §361; *Sweetser* v. *Odd Fellows, etc., Assn.* (1889), 117 Ind. 97, 100, 19 N. E. 722; *Tripp & Bailey* v. *Insurance Co.* (1882), 55 Vt. 100, 108; *Home Protection, etc.* v. *Avery* (1888), 85 Ala. 348, 351, 5 South. 143, 7 Am. St. 54; *Supreme Tribe, etc.* v *Hall* (1900), 24 Ind. App. 316, 324, 56 N. E. 780, 79 Am. St. 262; *Helm* v. *Philadelphia Life Ins. Co.* (1869), 61 Pa. St. 107, 100 Am. Dec. 621; *Union Cent. Life Ins. Co.* v. *Pottker* (1878), 33 Ohio St. 459, 462, 31 Am. Rep. 555; *Painter* v. *Industrial Life Assn.* (1892), 131 Ind. 68, 71, 30 N. E. 876; *Phoenix Mut. Life Ins. Co.* v. *Hinesley* (1881), 75 Ind. 1, 10; *Rutherford* v. *Prudential Ins. Co.* (1905), 34 Ind. App. 531, 539, 540, 73 N. E. 202, and cases cited; *Templer* v. *Muncie Lodge, etc.* (1912), 50 Ind. App. 324, 333, 97 N. E. 546; *Workingmen's, etc., Assn.* v. *Leverton* (1912), 178 Ind. 151, 153, 98 N. E. 871, and cases cited.

As applicable to the facts of the instant case, we quote from Bowers, Waiver §308: ''In determining whether a waiver has occurred, the test is whether an insurer, by his course of dealing with assured, or by the acts or declarations of his authorized agents, has produced in the mind of the assured an honest belief that the terms and conditions of the policy declaring a forfeiture in the event of nonpayment on the day and in the manner prescribed, will not be enforced, but that payment will be accepted on a subsequent

day or in a different manner; and where there is such belief, and the assured has acted upon it, the insurer will be estopped from insisting upon a forfeiture. So, the issue of a certificate after an assessment is in default is a waiver of the right to a forfeiture for its nonpayment. An acceptance of a past-due payment is, of course, a waiver of any breach of condition as to payment known by the insurer at the time, although such acceptance is not a waiver where the breach is unknown to the insurer at the time." The cases above cited and quoted from abundantly support the conclusion that, if *appellee* by any express agreement with appellant, or by any agreement implied from its acts and conduct led appellant honestly to believe that it, appellee, would receive from appellant the monthly premiums on his policy after the day fixed in the policy for the payment of such premiums, and thereby keep his policy alive at all times and for all purposes, appellee will thereby be estopped from asserting a forfeiture on account of a delay in payment of such premiums, providing, of course, that such delay was induced by such agreement and the premiums paid and received in accord therewith. It is also certain that the evidence herein set out was such as to have warranted a jury in finding that there was an agreement between Hyslop and appellant which justified the latter in believing that he might pay his premiums any time between the first and the tenth of each month and thereby keep his policy alive at all times and for all purposes; that pursuant to such agreement appellant, for almost two years before his injury, so paid his premiums, and appellee *through Hyslop* delivered to him proper renewal receipts therefor, showing that such policy was continued and kept alive during such period.

Indeed, we do not understand that appellee is disputing the legal proposition above announced, or that the effect of the evidence is as above indicated; but it is insisting that *it can not be estopped by the agreement or conduct of Hyslop.*

5.

This brings us to a consideration of the question of Hyslop's authority as agent of appellee and whether his agreement and acts would estop appellee from insisting on the forfeiture here asserted. An insurance company necessarily acts through its agents and a general rule of agency, expressed in many of the decided cases, charges the principal with any act or contract of the agent within the general scope of his *apparent* authority. *Buchanan* v. *Cain* (1914), 57 Ind. App. 274, 106 N. E. 885, and cases cited; *Farmers Mut. Fire Ins. Co.* v. *Jackman, supra; Commercial Union, etc., Co.* v. *State, ex rel.* (1888), 113 Ind. 331, 15 N. E. 518; *Kerlin* v. *National Accident Assn.* (1893), 8 Ind. App. 628, 35 N. E. 39, 36 N. E. 156; *Phoenix Mut. Life Ins. Co.* v. *Hinesley, supra; Public Sav. Ins. Co.* v. *Manning* (1915), *ante* 239, 111 N. E. 945, and cases cited. In applying the rule just announced, it has been held in this State, and in other jurisdictions, that an agent of an insurance company having ostensible general authority to solicit applications and make contracts of insurance and to receive first premiums binds his principal by any acts or contracts within the general scope of his *apparent* authority and that, in such a case, the agent is presumed to have the power of the company to waive immediate payment of premiums and make contracts for credit and thereby bind his company; also that an insurance agent authorized to accept payment of premiums, and issue renewal receipts may waive the payment of premiums in cash, notwithstanding a stipula-

tion in the policy to the contrary. *Painter* v.
*Industrial Life Assn.* (1892), 131 Ind. 68, 73, 76,
30 N. E. 876; *Western Assurance Co.* v. *McAlpine*
(1899), 23 Ind. App. 220, 227, 55 N. E. 119, 77
Am. St. 423; *Phoenix Mut. Life Ins. Co.* v. *Hinesley*,
*supra;* *Aetna Life Ins. Co.* v. *Fallow* (1903), 110
Tenn. 720, 77 S. W. 937, 940, and cases cited;
*Globe Mut. Life Ins. Co.* v. *Wolff* (1877), 95 U. S.
326, 24 L. Ed. 387; *United States Life Ins. Co.* v.
*Lesser* (1899), 126 Ala. 568, 28 South. 646; *American Credit, etc., Co.* v. *Hecht & Co.* (1910), 137 Ky.
261, 125 S. W. 697, 129 S. W. 340; *Walsh* v. *Aetna
Life Ins. Co.* (1870), 30 Iowa 133, 6 Am. Rep.
664; *Commercial Union, etc., Co.* v. *State, ex rel.,
supra;* 1 May, Insurance (4th ed.) §134; Bliss,
Insurance (2d ed.) §300. *Stewart* v. *Union Mut.
Life Ins. Co.* (1898), 155 N. Y. 257, 49 N. E.
876, 42 L. R. A. 147. From the application of
the general rule of agency, first above announced,
to the respective facts of each of the decided cases
cited and quoted from above, it would seem to
follow, by an analogy of reasoning, that where an
agent of an insurance company, as in the present
case, has the power to accept monthly premiums
and issue renewal receipts, thereby in effect,
extending or renewing the policy of insurance for
the period covered by the renewal receipt, such
power necessarily implies and carries with it
authority on the part of such agent to extend the
time of the payment of such renewal premiums.
*Aetna Life Ins. Co.* v. *Fallow, supra; Dromgold* v.
*Royal Neighbors, etc.* (1913), 261 Ill. 60, 103 N. E.
584.

Appellee insists, however, that by the express
terms of his policy, appellant was advised, and therefore agreed, that no agent had authority to
6. change such policy, or waive any of its
provisions. This provision is not essentially

different from that found in the policies considered by our courts in many of the decided cases in which it has been held that such a provision may itself be waived, and that such waiver may be effected by an agent of the company, acting within his actual or *apparent* authority. *German-American Ins. Co.* v. *Yeagley* (1904), 163 Ind. 651, 656, 71 N. E. 897, 2 Ann. Cas. 275; *United States, etc., Ins. Co.* v. *Clark* (1908), 41 Ind. App. 345, 358, 83 N. E. 760; *Farmers Mut. Fire Ins. Co.* v. *Jackman, supra; Public Sav. Ins. Co.* v. *Manning, supra; Dromgold* v. *Royal Neighbors, etc., supra;* Analogous cases are those which hold that where the policy provides that any waiver of its provisions must be indorsed on the policy, such provision may itself be waived, either by express agreement, or conduct of the company. *Metropolitan Life Ins. Co.* v. *Johnson* (1912), 49 Ind. App. 233, 244, 94 N. E. 785; *Hanover Fire Ins. Co.* v. *Dole* (1898), 20 Ind. App. 333, 338, 339, 50 N. E. 772; *Union, etc., Ins. Co.* v. *Whetzel* (1902), 29 Ind. App. 658, 665, 661, 65 N. E. 15; *Public Sav. Ins. Co.* v. *Manning, supra.* It has been decided several times in this State and in other jurisdictions

7. as well, in effect, that the knowledge of an insurance agent acquired while acting for his company in connection with a matter in which he is authorized to act, will be imputed to his principal. *Metropolitan Life Ins. Co.* v. *Johnson, supra; Metropolitan Life Ins. Co.* v. *Willis* (1906), 37 Ind. App. 48, 76 N. E. 560; *Commercial Life Ins. Co.* v. *McGinnis* (1912), 50 Ind. App. 630, 97 N. E. 1018; *Supreme Court of Honor* v. *Sullivan* (1901), 26 Ind. App. 60, 62, 59 N. E. 37. Upon this subject, the case of *Hodson* v. *Guardian Life Ins. Co.* (1867), 97 Mass. 144, 93 Am. Dec. 73, says: "Although an agent of the company had

no authority to bind them by receiving payment of a premium note after it was due, the company might receive such payment at any time. If they received the amount of the note from their agent after it was due, they were bound to inform themselves of the time when it had been paid to him; and by receiving it from him without inquiry they waived the right to insist on the delay in the payment as a ground of forfeiture of the policy." Again in the case of *Globe Mutual Life Ins. Co.* v. *Wolff, supra,* in speaking of an agent chargeable with the collection of premiums on policies, the court said: "It will be presumed that he (such agent) informs the company of any circumstances coming to his knowledge affecting its liability."

Appellee insists that the latter case stands alone and is out of harmony with the great weight of authority. It may be true that the language there used is broader than that found in any of the other cases, in that it imputes to the company *any knowledge affecting. its. liability generally* which may have come to its agent while such agent is acting in the scope of his authority even though the circumstance which brought to the agent such knowledge, or the knowledge itself, had no relation to, connection with or affect on the particular thing which the agent was authorized to do. When the language quoted is construed in the light of what precedes and follows it, and in the light of the facts of the particular case being considered by the court, it will be seen that the court intended to be understood as saying, that an agent of an insurance company, while acting for such company, in a matter in which he is required or authorized to act, will be presumed to inform his company of "any circumstances coming to his knowledge", in any

way affecting and necessarily incident to, the matter in which such agent was so required or authorized to act, and affecting the liability of the company, and hence is in harmony with the other cases and is sufficiently broad to include, and cover the facts of the instant case.

There is no contention made by appellee that Hyslop did not have authority to collect the monthly premiums and deliver the renewal receipts therefor as dated and countersigned by him, or that he did not make the agreement testified to by appellant, or that he did not receive appellant's monthly premiums between the first and the tenth of each respective month for a period of almost two years. It is also conceded, in effect, that during this period Hyslop as a part of his duties was required *to make and did make to appellee a monthly report of the premiums so collected by him.* It certainly can not be contended that the time of payment of such premiums was not a fact or circumstance connected with Hyslop's duty of collecting them, and in view of the provisions of the policy above set out, it was a fact and circumstance which both Hyslop and appellee necessarily knew affected appellee's liability, and hence under the authorities, *supra,* Hyslop's knowledge was appellee's knowledge. If appellee did not know that its agent had been receiving these premiums after the first of the month, and the arrangements under which they were received, the fault was not that of appellant but was its own or that of its agent to whom it had given authority to collect premiums and deliver the renewal receipts therefor, properly countersigned and dated, and from whom it required a monthly report, etc. Moreover it should be stated in this connection that the italicized portions of the letters, *supra,* of appellee and its

agent Hyslop to appellant warrant the inference that Hyslop in his monthly reports gave appellee full information as to the date of receiving the premiums reported. In its letter of July 22 to appellant, appellee says, that it had "ascertained from Mr. Hyslop, the collector" that the July premium was not paid until the tenth. How did it get this information? The italicized portion of Hyslop's letter of July 23, *supra*, answers this question. In this letter Hyslop says that appellee had said to him in its letter of a *few days* before that *"it hadn't received my July report as to whether you* (appellant) *had paid your July premium." "I wrote them giving dates when your remittance was received, which of course appeared on report as well."* This reference to appellee's letter and the words, "of course" as here used are significant. They make Hyslop's letter, at least, open to the interpretation that it was well understood by him and appellant that his reports were not made until after the first of the month and that when made they should show, and had, in fact, always before shown, the date when the premiums reported were paid; that he, Hyslop, took it for granted that appellant should also, *as a matter of course*, understand that his reports would show such fact. Having received the continued benefits of an arrangement made by its own agent in connection with the duty imposed on him, appellee is in no position now to relieve itself from the corresponding obligation incurred by such arrangement, the effect of which was to estop it from insisting on the forfeiture of the policy now claimed and asserted. The evidence was sufficient to warrant the inference that appellee knew or should have known of the arrangement between Hyslop

and appellant under which appellant's monthly premiums had been received and renewal receipts issued therefor for a period of almost two years; that if appellee did not know of such arrangement that it at least knew enough to put it on inquiry and hence should be charged with the knowledge which such inquiry would have elicited. Hyslop received appellant's last premium between July 8 and July 10, just as he had been receiving such premium for almost two years past, without question or inquiry as to appellant's condition or the reason for his delay in paying it, and just as Hyslop's past conduct had led appellant to believe he would receive it. The fact that the payment was made after appellant was injured can have no influence 8. on appellant's right to make it under his arrangement with Hyslop, especially in the absence of any evidence of collusion or fraud between appellant and Hyslop, and in the absence of any evidence to show that appellant had in fact before his injury made up his mind not to pay such premium, and permit a forfeiture of his policy as a result of such nonpayment.

It is further contended by appellee, that even though appellant had the agreement with Hyslop which he asserts and that appellee knew he was receiving appellant's premiums after they 9. were due, that in any event, such agreement must be read in the light of the provisions of the contract of insurance, and that paragraph "W" of the policy, above set out, expressly provides and fixes appellant's rights under his policy in case of delayed payments of premiums; that the premium receipts likewise show on their face that the respective premiums for which they were given were accepted by the company "*subject to the condition of the policy.*"

This contention of appellee is predicated on its affirmative answer which sets up said clause "W" of the policy and alleges that payments of premiums were made thereunder; that appellant was injured on July 8, 1912, at a time when he had no insurance under the policy; that appellee as soon as it had knowledge of the facts tendered back to appellant the premium of $2.60 so paid by him in July to appellee's agent on July 13, 1912, which sum so tendered by appellee was refused by appellant; that under the terms of the policy it was expressly agreed that no agent had any power or authority to change or alter the terms or time of payment of premiums and no agent had such power.

The question of the sufficiency of this answer is not presented. Assuming, without deciding that it states a good defense to appellant's complaint, the evidence upon the issue so presented is not undisputed. Appellant's statement of the arrangement made with Hyslop under which his premiums were paid and the extension agreed upon between him and Hyslop by which the time of payment was extended were inconsistent with a total or partial suspension of liability on the policy. It follows that the question whether appellant's premiums were received under clause "W" of the policy and his insurance continued thereunder was a question of fact under the evidence to be determined by the jury under proper instructions, and hence the peremptory instruction was in any event improper.

Appellee has filed a cross-assignment of error challenging the ruling of the trial court on its demurrer to each of the paragraphs of complaint. In our disposition of the questions raised by the peremptory instruction, we have in effect disposed of appellee's several objections to each of said

paragraphs, and an examination of their averments, above set out, and the decisions herein referred to and cited, will disclose that no error resulted from the ruling on such demurrers. It follows that on account of the error of the trial court in giving the peremptory instruction in favor of appellee the motion for new trial should have been granted.

The judgment below is therefore reversed with instructions to grant appellant's motion for a new trial, and such other proceedings as may be consistent with this opinion.

NOTE.—Reported in 112 N. E. 115. As to imputation of knowledge of agent to insurer so as to effect waiver, see 107 Am. St. 99. As to the effect of limitations on an agent's authority to waive conditions in insurance policy, see 2 Ann. Cas. 112; 9 Ann. Cas. 380. As to who is agent of insurance company so as to make his knowledge imputable to the company, see Ann. Cas. 1913 A 849. As to waiver of provision in life insurance policy as to time of payment of premium by acceptance of premium after appointed time, or similar act, see 7 Ann. Cas. 385.