FEDERATED MUTUAL IMPLEMENT &
HARDWARE INSURANCE COM-
PANY, Plaintiff-Appellee,

v.

Florence BUNCH, Defendant-Appellant.

No. 18987.

United States Court of Appeals,
Seventh Circuit.

Jan. 13, 1972.

Robert F. McCrea, Bloomington, Ind.,
for defendant-appellant; McCrea &
McCrea, Ellen A. Lloyd, Bloomington,
Ind., of counsel.

Alvin E. Meyer, Indianapolis, Ind., for
plaintiff-appellee; Stewart, Irwin, Gil-
liom, Fuller & Meyer, Indianapolis, Ind.,
of counsel.

Before SWYGERT, Chief Judge, and
MAJOR* and HASTINGS, Senior Cir-
cuit Judges.

HASTINGS, Senior Circuit Judge.

Randy Paynter, son of Beverly C.
Paynter, drove his mother's 1965 Ford
Mustang automobile on July 20, 1967,
and had with him as passenger guests
Joella Bunch, daughter of Florence
Bunch, and Teraca Brookshire. While
being so driven, the car collided with a
tree in Monroe County, Indiana, as a re-
sult of which Joella Bunch was killed
and Teraca Brookshire was seriously in-
jured.

Thereafter, Florence Bunch as plain-
tiff recovered judgment against Randy
Paynter in the amount of $20,000 in
cause No. 567–C–366 in the Monroe Su-

* Senior Circuit Judge Major, whose death
occurred on January 4, 1972, was a mem-
ber of the panel who heard oral argument,
but did not particiate in the adoption of
this opinion.

perior Court of Indiana for the death of her daughter in an action predicated on the acts or omissions of Randy in the operation of said automobile on July 20, 1967. Teraca Brookshire and Robert S. Brookshire instituted litigation for damages against Randy in the Monroe Circuit Court of Indiana, on the same grounds.

Federated Mutual Implement & Hardware Insurance Company (Federated), some time prior to July 20, 1967 had issued an automobile liability insurance policy from its home office in Owatonna, Minnesota, to Beverly C. Paynter, insuring her against loss as the owner of such Mustang car and, *inter alia*, extending coverage to include the use of such car by her son Randy. Subsequently, Federated declared that such policy of insurance was not in effect at the time of such accident and refused representation of the Paynters in the ensuing litigation, declined payment of the judgment Bunch had recovered and denied liability to all claimants.

On February 26, 1968, Federated filed a diversity declaratory judgment action in the United States District Court for the Southern District of Indiana[1] against Florence Bunch (Bunch), and others. Pursuant to Title 28, U.S.C.A. § 2201, Federated sought a judgment declaring in substance that the subject policy of insurance was not in effect on July 20, 1967 and that it had no legal liability to any defendant, including Bunch for the payment of her judgment against Randy Paynter. Following a bench trial, the district court entered its findings of fact, stated its conclusions of law and entered judgment in favor of Federated and adverse to all defendants. Florence Bunch alone has appealed.

■ The facts as found by the trial court and as otherwise appearing in the record are generally undisputed. The conclusions reached by Judge Dillin were determined as a question of law. It is agreed that the substantive law of Indiana applies. Erie R. Co. v. Tompkins,

304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Farber v. Great American Insurance Company, 7 Cir., 406 F.2d 1228, 1230 (1969). Our review on appeal necessarily requires a rather full statement of the relevant facts, as well as consideration of applicable Indiana law.

On April 8, 1967, defendant Beverly C. Paynter applied for a policy of automobile liability insurance covering her 1965 Ford Mustang automobile from Federated through its local agent at Bloomington, Indiana, Robert Livingston, who had authority to bind Federated to risks and to extend credit for the payment of initial premiums. At that time Mrs. Paynter was employed in the office of King Motor Sales in Bloomington where Livingston regularly called, King Motor Sales being one of Federated's principal accounts. Mrs. Paynter was then purchasing the Mustang from her employer as a second car and for the use of her son Randy. Her other car was already insured by another company. This led her to discuss the additional insurance coverage with Livingston when he called at King's. Livingston described an economy "Special Package Auto" policy, designed to cover two automobiles with a saving of money to her.

Livingston quoted Mrs. Paynter a premium of *somewhat less than $181.00*, accepted a down payment of $10.00 from her and stated the balance would be due upon delivery of the policy, which was to extend for a period of six months from that date. She signed the application for the policy as prepared by Livingston, who then said to her, "You will be insured when I walk out the door." To repeat, this occurred on April 8, 1967.

For some unexplained reason, Livingston delayed forwarding the application for the policy and the initial binder premium payment and it did not reach Federated at its home office in Owatonna, Minnesota, until May 24, 1967, a period of 46 days. The $10.00 payment was credited on May 25, 1967. Federated

1. Honorable S. Hugh Dillin, Judge, presiding.

executed the policy and, pursuant to instructions from its agent, mailed the policy to Livingston for delivery to the insured in Bloomington, Indiana. The mailing at Minnesota was on either June 1 or June 2, 1967. It was received by Livingston.

Following another unexplained delay of almost 20 days, on June 20, 1967, Livingston *mailed* the policy, along with the bill for the balance due, to the insured in Bloomington, which she received on June 22, 1967. The bill stated that if payment was not received within ten days from the billing date of June 19, 1967, it would be necessary to send a cancellation. Further, it was never explained why Livingston elected to mail the policy and bill for payment to the insured when he called regularly at her place of employment and had had the policy since early June. Thus, it appears that a total of 75 days elapsed between the execution of the application for the policy and its final receipt by the insured on June 22, 1967. It is also apparent that the unnecessary delay was due to the procrastination of Federated's agent Livingston.

The bill for final payment was for $171.00, making a total of $181.00. This was more than the "somewhat less than $181" originally quoted by Livingston to the applicant. In fact, originally Livingston had suggested a figure of $145.00 to her. Mrs. Paynter did not understand why she was being charged a higher premium. Further, she did not understand and wanted an explanation of one of the policy provisions, called "FAMILY EXCLUSION REMOVED."

On June 29, 1967, Federated mailed out a computerized notice of cancellation of the policy to Mrs. Paynter, which stated that if the balance due was not received by *July 14, 1967,* the contract would be canceled as of that date. Copies of such notice were also mailed to Livingston and to defendant Associates Discount Corporation. Associates advised Mrs. Paynter that action would be taken on her car loan if evidence of replacement insurance was not received by

it in the event of cancellation. Mrs. Paynter received such notice from Associates on or about July 5, 1967.

On July 12 or 13, Livingston called on Mrs. Paynter, who advised him she had not paid the premium because it was higher than he had quoted to her in April and because she did not understand the removal of the so-called "family exclusion" clause. Livingston obviously did not know how to answer either question and, *knowing the cancellation date was July 14, 1967,* took the policy with him in order to check the premium and to determine the meaning of the particular clause. Again, without explanation, Livingston did not return the policy to her until July 17, 1967, *three days after it was supposed to have been canceled.*

On July 17, 1967, Livingston and Federated's district sales manager Petty called upon Mrs. Paynter and explained the higher premium and the questioned "family exclusion" clause to her satisfaction. The policy was then handed to Mrs. Paynter and *she offered to pay the premium to agent Livingston at that time.* However, Petty intervened and told her that it would get to Federated faster if she mailed it directly to Federated. Mrs. Paynter responded that she would mail her check to the company that day, or the next morning. *At this meeting on July 17, 1967,* when the policy was returned to Mrs. Paynter and she offered then to pay the premium to the agent, *neither Livingston nor Petty said anything to her about the cancellation date of July 14 or anything concerning the current status of the policy.*

Finally, on July 24, 1967, Federated received at its home office a letter from Mrs. Paynter dated July 17, enclosing her check of the same date for the balance due on the premium. We credit the district court's finding that the letter and check were actually mailed on July 21, 1967, the day after the fatal accident occurred. Federated did not reinstate the policy but cashed the premium check, retained the pro rata part of the premium due for the period April 8 to

July 14, 1969, and issued its check to the insured for the remaining balance.

Based on the facts of this case, the district court held that, as a matter of law, Federated was authorized to and in fact did cancel the policy of insurance "in accordance with its unilateral rights of cancellation for nonpayment of premium, and said cancellation was effective July 14, 1967, at 12:01 A.M." [2]

The trial court determined that the "actions of the plaintiff's agents in this matter were far from commendable;" nevertheless, it finally concluded that "Mrs. Paynter failed to abide by the terms of the extension which she herself proposed," that is, to mail the premium balance to Federated on July 17 or 18, "and under the circumstances it would be manifestly unjust to permit her to effect reinstatement of the policy after the fact of loss."

■ Appellant Bunch urges that, based on the facts of this case, the trial court erred as a matter of law in concluding that the policy was effectively canceled by Federated for nonpayment of premium not later than July 14, 1967, at 12:01 A.M. She contends that Federated is estopped by the conduct of its agents from relying upon its cancellation. Bunch asserts that, based upon the agent's taking the policy from Mrs. Paynter a day or two before its cancellation date for the purpose of finding the answers to her questions about the policy, and then, with his district manager, redelivering the policy to her after the cancellation date, coupled with her immediate offer of payment which was declined, and all without even mentioning the subject of cancellation or the current status of the policy, lulled Mrs. Paynter into reasonably believing that the cancellation date of July 14 had been waived and that she was still insured. Appellant contends that, under Indiana law, all such conduct amounted to an extension of credit and waiver of immediate payment by Federated, and that under

such circumstances payment within a reasonable time was sufficient. We agree.

In support of its position Federated cites and relies upon State Farm Mutual Automobile Insurance Co. v. Perrin, 7 Cir., 331 F.2d 565 (1964); Farber v. Great American Insurance Company, 7 Cir., 406 F.2d 1228, 1230 (1969); and Moore, Admx. v. Vernon Fire & Cas. Co., 142 Ind.App. 334, 234 N.E.2d 661 (1968). We recognize the continuing validity of these cases. However, they are distinguishable from the case at bar in that they do not involve conduct on the part of the insurance agents *both before and after* the supposed cancellation that raised the issues of waiver and estoppel, but were concerned only with precancellation procedures.

A recent expression of Indiana public policy considerations which are inherent in questions involving motor vehicle liability insurance cancellation by means of mailing computerized notices of cancellation appears in Allstate Insurance Company v. Morrison, Ind.App., 256 N.E.2d 918, at 923–924 (1970), citing *Moore, Admx., supra*:

> "On the issue of mailing notice of cancellation the facts in this case are substantially the same as in the United Farm Bureau Mutual Insurance Company v. Adams, Ind.App., 251 N. E.2d 696, 698 (1969), in which this court stated:
>
> > 'The main issue before this court is whether the evidence that Appellant mailed the notice of cancellation is undisputed, without conflict and can lead only to the conclusion that Appellants did indeed mail the notice. In so doing, we must examine that evidence in a light most favorable to Appellees. However, before moving to that task, we are moved to remark that the method in which this question is brought before the court is very appropriate in light of the important policy consid-

2. Condition 17 of the policy permitted cancellation for nonpayment of premium upon mailing notice 10 days prior thereto to the insured.

erations inherent in the situation. Notice of motor vehicle liability insurance cancellation touches an area of public interest far beyond the scope of the relationship of the parties before us. The dangers of driving uninsured vehicles are obvious. Not only may one be subjected to the risk of a large financial liability at the hands of a negligently injured person, but the opportunity for that other injured party to gain a reasonable amount of damages for his injury is considerably lessened. It is for the benefit of every driver and passenger on our roads today, as well as ourselves, that we carry liability insurance. When this protection is being cancelled, public policy demands a strict compliance with the procedure involved so that the insured, or former insured, may be given reasonable opportunity to make other insurance arrangements before his old coverage is denied. See also, Moore v. Vernon Fire & Cas. Ins. Co., supra. [Ind.App., 234 N.E.2d 661 (1968)].'"

The leading Indiana case, West v. National Casualty Co., 61 Ind.App. 479, 112 N.E. 115 (1916), cited with approval by the district court, sums up the relevant law as follows: (1) if an insurance company by any express agreement with the insured or by any agreement implied from its acts or conduct leads the insured to honestly believe that it would receive late payment of premiums and thereby keep his policy alive at all times, then the company will be estopped from asserting a forfeiture on account of the delay in payment of premiums; (2) an agent of an insurance company having ostensible authority to solicit applications and receive first premiums binds his principal by any acts within his apparent authority and he is presumed to have the power to waive immediate payment and extend credit for their payment; (3) where the policy provides that any waiver of its provisions must be indorsed on the policy, such may itself be waived either by express agreement or by conduct; and (4) *the fact that a payment is made after an injury is sustained is immaterial if an agent, acting with apparent authority, extends the time of payment to a point beyond the date of the injury.*

In *West*, the court implied a waiver of forfeiture and extension of credit from the conduct of the insurance company in accepting late payment of monthly premiums the three months prior to the accident, which occurred one day before insured's late premium payment. *West* cited with approval Sweetser v. Odd Fellows Mutual Aid Association of Indiana, 117 Ind. 97, 19 N.E. 722 (1889). There the insured had made his late September payment on November 24 in the office of the association. He was informed then that his October assessment was past due and that his November assessment would fall due the next day. The insured said he would pay the October and November assessments in a few days. This was the 24th of November. He died December 15, without having paid the two overdue assessments. The court held that the company, by extending the time for payment in the past, without informing him when he made his payment on November 24 that this policy would no longer be continued, waived the forfeiture provision and extended credit for the payment of premiums for a reasonable time.

In *Sweetser*, the Indiana Supreme Court stated, at 103–104, 19 N.E. at 725: "It is not necessary that there should have been an agreement, formally expressed in words, to extend the time. If the officers of the association manifested by their acts, declarations, or conduct their assent to an extension of time, and their intention not to insist upon a forfeiture, and the insured honestly and in good faith relied and acted upon their conduct or declarations, the association is now estopped to say there was no agreement." *See* Michigan Mu-

tual Life Insurance Company v. Custer, 128 Ind. 25, 27 N.E. 124 (1891).

In the case at bar, under the facts as hereinabove set out, we find that Mrs. Paynter honestly believed that the cancellation was never effective or had been waived, that she had insurance and that she had a reasonable length of time in which to pay. Federated is now estopped to say that there was no agreement to insure. *West* and *Sweetser, supra.*

Mrs. Paynter may not be bound to pay by the next morning, July 18, as she indicated she would do. In *Sweetser,* the insured said he would pay the next day, November 25, yet he had not paid by December 15, when he died. There the court had past dealings upon which to find a reasonable time for extension of credit. In the case at bar, Federated's delay of 75 days in executing and delivering her policy and answering her questions would seem to indicate that her four day delay of payment from July 17 to 21 was within a reasonable period of time.

Analogously, as was declared in Baird v. Aluminum Seal Co., 122 Ind.App. 572, at 580, 105 N.E.2d 825, at 829 (1952): "Having waived this right appellee could not reassert it without giving appellants a reasonable specific and definite notice of its intention to act under the forfeiture provision of the contract." *Cf.* Chambers et al. v. Boatright et al., 132 Ind.App. 378, 177 N.E.2d 600 (1961). Similarly, having waived the right of cancellation and immediate payment of premium, Federated could not reassert it without giving Mrs. Paynter a definite and specific notice of its intention to cancel the policy if she did not pay the premium the next day as she indicated she would do.

The factual realities of this case necessitate that we give effect to the intentions of the parties throughout this transaction. After the meeting on July 17, Mrs. Paynter reasonably believed that she was still insured; also, both Federated's agent and district sales manager from their conduct implied that she was insured at least for a reasonable time until she paid the premium. Federated is indeed hard put, after taking 75 days to deliver the policy, to negate the existence of insurance because Mrs. Paynter did not pay the next day as she had stated she would do. This is particularly so when the evidence was that the insured offered to pay the agent on the 17th but Petty, the supervisor, said it would be better if she sent it directly by mail. "It is well settled that an insurance company may waive conditions inserted in the policy for its benefit, and that such waiver may be inferred from the conduct of its agents and representatives." Prudential Insurance Co. v. Bidwell, 103 Ind.App. 386, at 396, 8 N.E.2d 123, at 127 (1937).

Federated may not now rely upon any "non-waiver" clause in the policy. " * * * [A] provision specifying the manner in which the contract of insurance may be modified or limiting the power of agents, may be waived by the corporation. It follows that such corporation through and by the act of an agency may waive such limiting provision * * *." Public Savings Ins. Co. v. Manning, 61 Ind.App. 239, at 249, 111 N.E. 945, at 948 (1916). *See also* Travelers Insurance Co. v. Eviston, 110 Ind. App. 143, 156–157, 37 N.E.2d 310 (1941). Federated "cannot make its local agent the medium through which all the benefits of a policy flow from the insured to it, and then deny that he has authority to represent it when the benefits of the insured are involved." *See Public Savings, supra,* 61 Ind.App. at 250, 111 N.E. at 948.

In Painter v. Industrial Life Association, 131 Ind. 68, 30 N.E. 876 (1892), the insurance company had for the previous three months accepted payment of premiums one to four days after the end of the grace period for payment. The

insured died January 5 without having paid the premium due December 31. The Indiana Supreme Court asserted, at 74, 30 N.E. at 878, citing *Sweetser, supra*: "* * * [F]orfeitures are not favored in law, and such continued course of dealing between the insurer and the insured as would lead the insured to honestly believe that the dues would be accepted within a reasonable time after the same became due, * * * [leads to the result that] no forfeiture would be declared, the company would be estopped from declaring a forfeiture within a reasonable time after the dues became payable, and the policy would continue in force during that time." [3]

In light of the foregoing, we conclude that, as a matter of law, the learned district court erred in holding that Federated effectively canceled the subject liability insurance policy for nonpayment of premium as of July 14, 1967. To the contrary, we conclude and hold that, under the facts of this case and applicable Indiana law, the policy was never effectively canceled by Federated but remained in full force and effect on the date of the fatal accident to Joella Bunch on July 20, 1967, and that Federated is liable for payment of the judgment of $20,000 recovered by Florence Bunch against Randy Paynter in the Monroe Superior Court of Indiana for the death of her daughter, together with interest from the date of said judgment, and the costs of the instant action on this appeal.

The judgment of the district court is reversed and this cause is remanded with instructions to enter judgment for appellant consistent with this opinion.

Reversed and remanded with directions.

3. The following was announced in Farnum v. Phenix Ins. Co., 83 Cal. 246, 23 P. 869 (1890), cited by numerous state courts including Indiana: "It seems to be settled * * * that an express provision in a policy of insurance that the company shall not be liable on the policy until the premium is actually paid, is waived by the unconditional delivery of the policy to the assured as a completed and executed contract, under an express or implied agreement that a credit shall be given for the premium; and that in such case the company is liable for a loss which may occur during the period of the credit." 23 P. at 871.