Dorothy I. BRAND, Appellant
(Plaintiff Below),

v.

MONUMENTAL LIFE INSURANCE
CO., Appellee (Defendant Below).

No. 2–277A44.

Court of Appeals of Indiana,
Fourth District.

Nov. 5, 1979.

Chalmer Schlosser, Jr., William L. Schlosser, Schlosser, White & Schlosser, Indianapolis, for appellant.

Myron H. Budnick, Buschmann, Carr & Schabel, Indianapolis, for appellee.

MILLER, Presiding Judge.

Appellant Dorothy Brand (Brand), wife of Bruce Brand, the insured, brings this appeal from an adverse judgment after a trial to the court in an action for the $10,000 proceeds of a life insurance policy, alleging the judgment was contrary to law and the evidence. Brand contends that Appellee Monumental Life Insurance Co. (Monumental) should have been estopped from asserting a forfeiture of policy benefits for non-payment of monthly premiums. It was Monumental's admitted practice to accept premiums paid within sixty (60) days after the end of a thirty-one (31) day grace period provided the insured was alive and apparently in good health. Brand tendered three monthly premiums within the additional sixty (60) day grace period, but after the death of the insured, Bruce Brand. Monumental refused to accept the tender of payments. It contends its actions were justified in that the condition for the extension, i. e., that the insured be alive and apparently in good health, was not met because Bruce Brand died before the tendered payment was made.

We reverse and remand, instructing the trial court to enter judgment and award

compensation not inconsistent with this opinion.

*FACTS*:

Although testimony was heard in the trial of this cause, we believe the facts relevant to our decision are contained in a document entitled "Stipulations" to which both parties through their attorneys agreed before trial.[1] The stipulations in pertinent part read:

1. The premium payment book with attached receipt contains a true record of the dates of collection of premiums on the insurance policy.[2]

   .    .    .    .    .

5. Defendant's agents visited the home of Bruce Brand and Dorothy Brand on or about July 9, 1975, for the purpose of asking Bruce Brand and Dorothy Brand to pay the amount of premiums then overdue.

6. The amount of overdue premiums was at that time $48.87, for the months of May, June and July of 1975.

7. Defendant's agents, after meeting with Bruce Brand and Dorothy Brand, attempted to contact Bruce Brand's mother, Margaret Smith, for the purpose of asking her to pay the amount of said overdue premiums on behalf of Bruce Brand and Dorothy Brand.

8. Bruce Brand died on July 14, 1975.

9. Dorothy Brand tendered the amount of overdue premiums to defendant's agents on or about July 22, 1975.

10. Defendant's agents refused said tender.

11. Defendant has a practice or procedure whereby premium payments are accepted within 60 days of the expiration of the applicable grace period, provided defendant's agents receive at least verbal assurance that the insured is alive and apparently in good health.

12. Dorothy Brand had actual knowledge of defendant's practice or procedure set forth in stipulation No. 11.

13. The premium payment tendered by Dorothy Brand on or about July 22, 1975, would have been accepted by defendant's agents on behalf of defendant, if Bruce Brand had been alive and apparently well at that time.

*ISSUE*:

The single issue[3] presented for review is:

Should Monumental have been precluded from claiming a forfeiture of the proceeds of the policy when its acknowledged practice was to accept premiums paid within sixty (60) days after the end of the thirty-one (31) day grace period provided the insured was alive and apparently in good health, and Brand tendered the premiums to the company within the sixty (60) day period, shortly after the death of the insured?

*DECISION*:

■ First we note Brand seeks a reversal of a negative judgment claiming it to be contrary to law and the evidence. The standard for determining when a negative judgment will be overturned was stated in *Taxpayers Lobby of Indiana, Inc. v. Orr* (1974), 262 Ind. 92, 311 N.E.2d 814, 819:

   "A finding, which is in effect a negative finding against the plaintiff, may be set aside only if the evidence is uncontradicted and will support no reasonable inference in favor of the finding."

---

1. We note here that Brand did not move for a summary judgment pursuant to Ind.Rules of Procedure, Trial Rule 56.

2. The premium receipt book indicates that on three separate occasions the monthly premiums were accepted more than thirty-one days after the due date: the April 1, 1974 premium was paid on May 16, 1974; the February 1, 1975 payment was paid on March 10, 1975; and the March 1, 1975 payment was paid on April 16, 1975.

3. Brand has waived any possible error on her claim of punitive damages, as the issue was omitted from Appellant's Brief. Indiana Rules of Appellate Procedure 8.3(A)(7).

See also *Umbreit v. Chester B. Stem, Inc.* (1978), Ind.App., 373 N.E.2d 1116. *Utopia Coach Corporation v. Weatherwax* (1978), Ind.App., 379 N.E.2d 518.

With this standard in mind, we have reviewed the record in this cause and agree with Brand's contention that the judgment of the court was contrary to law.

■ Indiana courts do not favor forfeitures of insurance proceeds. (See, *Lewis v. American Family Insurance* (1977), Ky., 555 S.W.2d 579, 582, applying Indiana law.) The Indiana Supreme Court in *Kentucky Mutual Insurance Co. v. Jenks* (1854), 5 Ind. 96, 103, stated:

"It is not good policy in the Courts to favor such devised insurance policies, as that whatever happens, the underwriters may reap the premium and escape the risk."

On a number of occasions our Supreme Court has addressed the question of forfeitures of insurance proceeds in the context of late payments and the waiver of their timeliness. In *Odd Fellows Mutual Aid Association of Indiana v. Sweetser* (1889), 117 Ind. 97, 19 N.E. 722, the insurance agreement provided that the premium payments could be made within ten days after the due date which fell on the 25th day of each month. However, in reality payments were accepted up to sixty days after their due date. On November 24, the insurance company accepted the September 25th payment. At that time the insured was informed his October 25th payment was late and his November payment would be due the next day. He died on December 15 without having paid the October and November payments.

The Court in holding that the company was estopped from asserting a forfeiture stated:

"It is abundantly settled that an insurance company will be estopped to insist upon a forfeiture, if by any agreement, either express or implied by the course of its conduct, it leads the insured honestly to believe that the premiums or assessments will be received after the appointed day.

.     .     .     .     .

It is not necessary that there should have been an agreement, formally expressed in words, to extend the time. If the officers of the association manifested by their acts, declarations, or conduct their assent to an extension of time, and their intention not to insist upon a forfeiture, and the insured honestly and in good faith relied and acted upon their conduct or declarations, the association is now estopped to say there was no agreement." *Id.* at 723, 725. (See also *Federated Mutual Implement & Hardware Co. v. Bunch* (7th Cir. 1972) 455 F.2d 247.)

In *Michigan Mutual Life Insurance Company v. Custer* (1891), 128 Ind. 25, 27 N.E. 124, an insurance company was estopped from asserting a forfeiture for overdue premium payments because of its practice of extending the time for the payment. Instead of demanding cash payment on Custer's June 3, 1884 annual premium the insurance company accepted a note due January 3, 1885 and later extended the maturity date of the note to June 3, 1885. On May 9, 1885 Custer died. The trial court entered judgment for Custer. On appeal the Indiana Supreme Court stated:

"According to the interpretation claimed by the appellant, the arrangement to extend the time for the payment of the note, so far as his right [sic] under the policy were concerned, would have left him precisely in the condition he would have been without an extension. It would enable the company, under a show of leniency, to receive all the benefits of the extension, and yet remain in a condition to repudiate all liability during the same time. It would enable the company, whatever happened, to 'reap the premium and escape the risk.' *Kentucky Mut. Ins. Co. v. Jenks*, 5 Ind. 96.

.     .     .     .     .

'It cannot be intended from the simple transaction of giving time for payment of the premium, that is, giving credit instead of exacting prompt payment, the parties had in view the continuance of

the contract merely to secure the benefit of it to the insurer by the payment of the premiums if the peril insured against should not happen, but, in case of the death of the insured before the time should elapse for its payment the contract should be void; that is, that upon the occurrence of the event constituting the peril, indemnity against which was the only object and purpose of the contract, the policy should be of no avail. This would be saying, to one undertaking to pay in the future for a risk to commence *in praesenti*, that his life is insured if he lives, but if he dies he is not insured.' [*Homer v. Insurance Co.*, 67 N.Y. 478.]" *Id.* at 126.

In *West v. National Casualty Co.* (1916), 61 Ind.App. 479, 112 N.E. 115, West had made and the insurance company had accepted his last three premiums as late as ten days after their first of the month due date. He was injured and tendered his monthly premium payment on the 8th of the month. The Appellate Court of Indiana held the fact that a payment was made after an injury occurred is immaterial if an agent of the insurance company had extended the time of payment to a point beyond the date of injury.

Also in *Painter v. Industrial Life Ass'n* (1892), 131 Ind. 68, 30 N.E. 876, the insured's payments were due on the first day of the month with the remainder of the month a grace period. Painter, however, had been allowed to make payments on the first, second, and fourth days of the month following the grace periods. He died on January 5, 1880, and had not paid his December payment. The insurance company was again estopped from asserting a forfeiture.

■ The general rule concerning a loss during an extension or grace period as stated in *Couch on Insurance 2d* is:

"If the death or loss occurs during the extension or grace period, it is no bar to recovery that the premium has never been paid. . . .

Accordingly, where payment is required to be made within a specified time, or within a certain number of days after notice, otherwise the policy to be forfeited, the fact that the assessment is unpaid when death occurs does not prevent a recovery if the period specified has not expired at the time of death." *Couch on Insurance 2d* § 32:134.

■ We believe the court's judgment in the instant case conflicts with the principles enunciated in the foregoing authorities. Monumental stipulated their practice was to accept premium payments within sixty (60) days of the expiration of the grace period provided the insured was alive and apparently in good health.[4] Thus, it conditioned liability on having no risk during the extended grace period. This is prohibited by *Michigan Mutual, supra,* as it "enable[s] the company under a show of leniency to receive all the benefits of the extension, and yet remain in a condition to repudiate all liability during the same time." *Id.* at p. 126 of 27 N.E. This practice is also prohibited by *West v. National Casualty, supra,* since it disallows recovery for a loss that occurs before payment when the company has extended the time of payment beyond the date of the loss.

Finally, with respect to interest to which Brand is entitled, we note the insurance policy requires Monumental "to pay the amount of insurance to the beneficiary upon receipt of due proof of death." The record does not clearly establish when there was actual proof of death given Monumental. It does reveal Brand contacted Monumental on July 16, 1975, and was informed she would get no relief. However, the record does not fully disclose the substance of the conversation. It is stipulated that

4. An extension of a grace period is distinguishable from a lapse and re-instatement provision. While the former extends all rights and liabilities under the policy, during the latter, the relationship is extinguished. Thus a company can condition re-instatement on conditions such as good health. *Couch on Insurance 2d* § 32:361. In the instant case there was a lapse provision in the policy. However, it is clear from the facts in this case we are dealing with an extension of a grace period rather than a lapse.

Brand tendered the amount of the overdue premiums on July 22, 1975, which would have been accepted by Monumental, but were not because the insured was not alive at that time. From these facts it is clear that by July 22, 1975, Monumental was certain enough of the insured's death to satisfy the requirement of "due proof of death."

As a general rule prejudgment interest is chargeable against an insurer under a life insurance policy, payable on proof of death, from the time such proof was given. 44 *Am.Jur.2d* 481, *Insurance*, § 1593. "[T]he crucial factor in determining whether to allow interest before judgment is whether the damages are complete and ascertainable as of a particular time in accordance with fixed rules of evidence and accepted standards of valuation." *Urbanational Developers, Inc. v. Shamrock Engineering, Inc.* (1978), Ind.App., 372 N.E.2d 742, 750; *New York, Chicago and St. Louis Ry. Co. v. Roper et al.* (1911), 176 Ind. 497, 96 N.E. 468. Here the amount and time for payment are set by the terms of the life insurance policy, and, thus, the damages were "complete and ascertainable" on July 22, 1975. Brand is entitled to judgment in the amount of $10,000.00 with prejudgment interest at the rate of eight percent[5] from July 22, 1975 to the date of entry of judgment plus post-judgment interest and costs.

Reversed.

SULLIVAN (by designation), and CHIPMAN, JJ., concur.