BAIRD ET AL. *v.* ALUMINUM SEAL COMPANY, INC.

[No. 18,249. Filed May 15, 1952. Rehearing denied June 14, 1952. Transfer denied October 6, 1952.]

*Maurice J. Coughlin,* of Erie, Pennsylvania, and *Harlan, Brubaker, Harlan & Schussler,* of Richmond, for appellants.

*Smith, Buchanan, Ingersoll, Rodewald & Eckert,* of Pittsburgh, Pennsylvania, and *Brown, Reller, Mendenhall & Kleinknecht,* of Richmond, for appellee.

ROYSE, J.—Appellee brought this action against appellants on a note given as security for the performance of a building contract within the time specified. The facts, as shown by the record, may be summarized as follows:

In the Spring of 1947 the Aluminum Seal Company, a Pennsylvania corporation (a subsidiary of Aluminum Company of America), decided to move its business from New Kensington, Penna. to Richmond, Indiana. The problem of securing housing for its employees in Richmond was acute. The Company desired to obtain as quickly as possible houses for those of its employees being transferred to Richmond at rentals of approximately the same as those paid by its employees in New Kensington. The Company did not desire to purchase the property and thereby create the relation of landlord and tenant between it and its employees. They discussed this problem with the appellant, J. Dwight Baird. He obtained an option to purchase certain real estate in Richmond which contained at least thirty-five residence building sites. (Hereinafter, the term "appellant," when used in the singular, shall refer to him.) After several conferences with appellant, he and the aforementioned Company entered into a written agreement on May 14, 1947.

This contract, in substance, provided appellant was to promptly exercise his option and acquire marketable fee title to the property in Richmond. It provided appellant was to promptly construct thirty-five houses according to plans agreed upon; that all houses shall be completed within one year from date of the contract.

Under the terms of this contract appellant was required to:

"(a) Notify the Company in writing (i) at least thirty (30) days in advance, when each such house will be ready for initial occupancy and (ii) as early as practicable when any previously-rented house becomes or will become unoccupied.

"(b) Refrain from renting any such house to any person other than the Company or a person designated by it for a period of twenty (20) days after notice to the Company of the date it will be ready for initial occupancy and for a period of ten (10) days after notice to the Company of the date it becomes or will become unoccupied, such periods being hereinafter referred to as notice periods.

"(c) Rent any house when it is ready for initial occupancy, or when it becomes unoccupied, to such person, if any, as may be designated by the Company within any notice period.

"(d) Upon request of the Company within any notice period, refrain from renting any such house, whether or not previously rented, for any period of time for which the Company shall pay to the Sponsor sums equivalent to the rent for such house.,

"(e) Refrain from selling the said houses as a unit or any such house separately without first offering to sell and convey the same to the Company, or any person designated by it, at a price not to exceed the highest price at which said houses, or any such house, as the case may be, could then be sold by Sponsor to any other person. Such offer shall be accepted or rejected within fifteen (15) days from the time of the offer.

"The rental to be paid for any such house by any person designated by the Company, or the amount to be paid by the Company under subsection (d) of this section, shall not exceed the lowest monthly rental for which such house has been rented or offered for rent by the Sponsor and in no event shall exceed the monthly rental for such house shown in Exhibit B hereto. The obligations of the Sponsor under subsections (a), (b), (c) and (d) of this section shall terminate at the expiration of five (5) years from the date of this agreement and

the obligations of the Sponsor under subsection (e) of this section shall terminate at the expiration of twenty-one (21) years from the date of this agreement."

Time was made the essence of this contract.

Contemporaneously with the execution of this contract the parties entered into an escrow agreement with the National Bank & Trust Company of Erie, Penna., under the terms of which the Company paid to said escrow agent the sum of $25,000 to be disposed of pursuant to the terms of the escrow agreement. The provisions of the escrow agreement pertinent to the question presented here are as follows: (In the contract appellant was referred to as "Sponsor.")

"1. The Bank acknowledges the receipt from the Company of the sum of twenty-five thousand dollars ($25,000) to be held by the Bank on deposit and disposed of by it as follows:

"(a) Five thousand dollars ($5,000) shall be paid by the Bank forthwith to the Sponsor upon receipt from the Sponsor of his demand promissory note payable to the order of the Company in the amount of five thousand dollars ($5,000) without interest.

"(b) Ten Thousand Dollars ($10,000) shall be paid by the Bank to the Sponsor upon (i) presentation to the Bank by the Sponsor of a receipt for recording issued by the office for the recording of deeds in Wayne County, Indiana, of a deed from Richmond Homes, Inc. to the Sponsor for the Homesite, and (ii) receipt by the Bank from the Sponsor of his demand promissory note, payable to the order of the Company in the amount of ten thousand dollars ($10,000) without interest.

"(c) Five Thousand Dollars ($5,000) shall be paid by the Bank to the Sponsor upon (i) presentation to the Bank by the Sponsor on or after July 10, 1947 of the certificate of final approval of completion of the Federal Housing Administration for eighteen (18) houses upon the Homesite; and (ii) receipt by the Bank from the Sponsor of his de-

mand promissory note, payable to the order of the Company in the amount of five thousand dollars ($5,000) without interest.

"(d) Five Thousand dollars ($5,000) shall be paid by the Bank to the Sponsor upon presentation to the Bank by the Sponsor within one year from the date of this agreement of the certificate of final approval of completion of the Federal Housing Administration for thirty-five (35) houses upon the Homesite and with such payment the Bank shall deliver to the Sponsor all his promissory notes theretofore received, by the Bank hereunder.

"\* \* \*

"2. If within one year from the date of this agreement the Sponsor shall not have presented to the Bank the certificate of final approval of completion of the Federal Housing Administration for thirty-five (35) houses on the Homesite in accordance with the foregoing subsection .(d), the Bank shall forthwith pay to the Company any balance of said sum of twenty-five thousand dollars ($25,000) then held by it hereunder and deliver to the Company all the promissory notes of the Sponsor theretofore received by the Bank hereunder."

On December 26, 1947 the foregoing agreements were amended by the Company and appellant in the following particulars:

"1. In addition to the amount identified in Section 1 of the Agreement relating to 'Escrow', it is hereby agreed that contemporaneous with the execution of this amendment and upon receipt by Company of Sponsor's demand promissory note payable to the order of the Company in the amount of Ten Thousand Dollars ($10,000) without interest, Company shall deliver to Sponsor a check in the amount of Ten Thousand ($10,000) Dollars. The above promissory note will be returned to Sponsor at the same time and in accordance with the same requirements as set out in Article 1, subsection (d) of the Escrow Agreement of

May 14, 1947 by and between Sponsor, Company, and the National Bank and Trust Company of Erie, Pennsylvania.

"It is understood that this amount together with the $25,000.00 amount identified in Section 1 of the agreement shall constitute the entire consideration to be given by Company under these agreements.

"2. Article 3, relating to Sponsor's obligations under the agreement, shall now be changed in the following respects, to-wit:

"(a) The existing subsection (e) shall be deleted and a new subsection (e) be substituted." (This provision not pertinent to question presented in this case.)

On January 2, 1948 the Company executed a bill of sale and deed conveying all of its property including the note involved in this action to appellee herein.

On May 19, 1948, in a letter to the Bank appellant was granted an extension of ninety days to fulfill his agreement. The pertinent portion of this extension is as follows:

"In view of the unforseen situation which exists Aluminum Company of America, acting on behalf of Aluminum Seal Company, Inc., its fully owned subsidiary, hereby authorizes you to extend the term of the escrow agreement for a further period of ninety days beyond May 14. We have no doubt but what Mr. Baird will be able to meet his contractual obligations well before the expiration of this additional period but, as a matter of record, we take this action with the understanding that all of the terms and conditions of the escrow agreement remain in full force and effect except as herein set forth, and that the agreement must be fulfilled to the letter at the end of the 90-day period if the undertaking has not been completed."

The record further discloses the appellee advanced other substantial sums of money to aid in the prompt completion of the work contemplated by the contracts

involved herein. However, these advances are not material to the question before us. At the trial of this cause it was stipulated "that by and on June 23, 1948 all of the houses which the Seal Company elected to use for tenants were occupied by their employees." There were thirty-two such houses. Three of the houses were not required by appellee and were occupied by other tenants. The F.H.A. certificate of final approval was not received until November 12, 1948. When the ninety-day extension expired in August, 1948 appellee did not demand the return to it of the notes as provided for in the escrow agreement. On September 14, 1948 and on November 8, 1948 appellee wrote the Bank directing it to continue to hold these notes while they carried on negotiations with appellant in reference to the F.H.A. certificate and the payment of the proceeds of a first mortgage in favor of the Prudential Insurance Company. Appellants, through judicial sale, lost the Richmond property on a material claim June 6, 1950. At this sale appellee bought this property. The following further stipulation was made by the parties:

"We stipulate that until Mr. Baird lost his interest in and connection with the houses on June 6, 1950, Aluminum Seal exercised the rights granted under the Agreement to select the tenants for the houses in question which had not been released from the Agreement, and that the said tenants did occupy those houses, and that this policy continued, as it suited the convenience of the Aluminum Seal Company up to the period of June 6, 1950."

On or about April 1, 1949 appellee brought this action against appellants on the $10,000 note referred to in the amended agreement. Trial to the court resulted in finding and judgment for $10,000 and costs against appellants.

The error assigned here is the overruling of appellant's motion for a new trial. There are several specifications to this motion. Because of the conclusion we have reached it is only necessary to consider the first two, viz, the decision is not sustained by sufficient evidence and is contrary to law.

Appellant contends there is no evidence in the record that appellee suffered any damage as a result of the delay in procuring the F. H. A. certificate of approval; that appellee accepted and continued to receive benefits of the contract after the default; that there was a substantial compliance with the contract.

Appellee in its brief concedes it suffered no damage because the F. H. A. certificates were delivered in November, 1948 instead of August 12, 1948. It further asserts when it placed the $35,000 in escrow and beyond its control it performed its consideration; that whether or not appellant was entitled to receive the escrowed money is to be determined entirely by the terms of the contract.

It is perfectly obvious (and in its brief conceded by appellee) that its prime objective in entering into the contracts involved herein was to provide as quickly as possible suitable housing at advantageous rentals for certain of its employees. This they received long prior to the expiration of the extended contract.

Appellee conceded in the oral argument of this cause that if appellants had presented the F. H. A. certificates by August 12, 1948 the escrow agent would have been obligated to return the notes to them. Appellee was not harmed by the failure to get these certificates at the time specified. Before and after the last mentioned date it received and accepted all of the houses it could use.

However, conceding, without deciding, that appellee, because of appellant's failure to procure the F. H. A.

certificates by August 12, 1948 could have elected to enforce payment of the note here involved as well as the other notes referred to in the escrow agreement, the undisputed facts show it did not so elect. On the contrary it, by letters, expressly waived such rights. Certainly it cannot be seriously contended it did not have the right to do this. Having waived this right appellee could not reassert it without giving appellants a reasonable specific and definite notice of its intention to act under the forfeiture provision of the contract. *Hill* v. *Rogers* (1951), 121 Ind. App. 708, 99 N. E. 2d 270 (Transfer denied); *Ohio Falls Car Company* v. *Menzies* (1883), 90 Ind. 83; *Cummings* v. *Pence* (1890), 1 Ind. App. 317, 27 N. E. 631. This appellee did not do.

Finally there is no merit to the contention of appellee that the interests of justice require an affirmance of the judgment herein because it advanced substantial sums in addition to the amount provided for in these contracts. Admittedly it did this voluntarily for its own purpose. It made other independent agreements in reference to such advances and took what it believed sufficient additional security to protect its interests. If appellants breached other parts of their contract, appellee had its remedy. Here we are only concerned with the question of whether, under the terms of the contracts herein, appellants were liable on the note sued upon. We hold they were not.

Judgment reversed.

Achor, J., not participating.

NOTE.—Reported in 105 N. E. 2d 825.